JAMES M. MALONEY (JM-5297)
*Attorney for Plaintiff*
33 Bayview Avenue
Port Washington, New York 11050
Telephone: (516) 767-1395

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

SULAIMAN OLADOKUN,

                                    Plaintiff,                          **COMPLAINT**

                    - against -

JOHN R. RYAN, individually and in his official capacity
as President of State University of New York Maritime
College, KIMBERLY R. CLINE, individually and in her
official capacity as Vice President for Administration
and/or Chief Operating Officer of State University of
New York Maritime College, and RICHARD S. SMITH,       **JURY TRIAL DEMANDED**
in his official capacity as Commandant of Cadets of State
University of New York Maritime College,

                                    Defendants.

--------------------------------------------------------------------X

        Plaintiff, SULAIMAN OLADOKUN, by his attorney, James M. Maloney, as and for his

complaint against the above-named defendants, declares as follows:


                                    **PARTIES**

        1. At the commencement of this action and at all times hereinafter mentioned, Plaintiff

was and is a natural person and a citizen of Nigeria.

        2. On March 26, 2003, the date of the occurrence complained of herein, Plaintiff was

lawfully resident in the United States, in the State of New York, and in this District, having been

granted an F-1 student visa in or about January 2000 for the purpose of attending State University

of New York Maritime College, Bronx, New York.

3. On March 26, 2003, Defendant JOHN R. RYAN was the President of State University of New York Maritime College.  At the commencement of this action, Defendant JOHN R. RYAN was and is the Chancellor of the State University of New York.  He is sued both individually and in his official capacity.

4. On March 26, 2003, and at the commencement of this action, Defendant KIMBERLY R. CLINE was and is the Vice President for Administration and/or the Chief Operating Officer and/or the Chief of Staff of State University of New York Maritime College.  At the commencement of this action, Defendant KIMBERLY R. CLINE was and is also the Vice Chancellor and Chief Financial Officer of the State University of New York.  She is sued both individually and in her official capacity or capacities.

5. On March 26, 2003, and at the commencement of this action, Defendant RICHARD S. SMITH was and is the Commandant of Cadets of State University of New York Maritime College.  He is sued in his official capacity only.

6. Attached hereto as **Exhibit 1** is a true copy of a web page accessed March 24, 2006, bearing the Internet address (url) http://www.sunymartime.edu/Administration/ and showing the official capacity or capacities at SUNY Maritime of Defendant KIMBERLY R. CLINE and Defendant RICHARD S. SMITH as of that date.

## JURISDICTION AND VENUE

7. This action arises under the Constitution of the United States and is accordingly brought pursuant to the provisions of 42 U.S.C. § 1983.

8. This Court has subject matter jurisdiction over the federal causes of action stated herein pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over the related state law claims against Defendants JOHN R. RYAN and KIMBERLY R. CLINE individually (as opposed to in their official capacities) pursuant to the provisions of 28 U.S.C. § 1367.

9. Venue is properly placed in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND

10.  Plaintiff was enrolled in an Engineering program at of  State University of New York Maritime College ("SUNY Maritime") from approximately August 30, 2000, to March 26, 2003.

11. On or about March 6, 2003, Plaintiff's graduation form the program was imminent, and he joined the "Order of the Engineer" along with 23 other graduating Engineering students in an induction ceremony held in one SUNY Maritime's lecture halls.

12.  On or about March 7, 2003, Plaintiff  was apprehended at SUNY Maritime by two Joint Terrorism Task Force ("JTTF") agents in connection with suspicion as to the authenticity of documentation submitted by Plaintiff in obtaining his F-1 student visa in or about January 2000, specifically the validity of documents and statements relating to his prior attendance at the Nigerian Federal College of Fisheries and Marine Technology ("Nigerian Federal College").

13.  The JTTF agents were responding to a call from someone within the College administration to the effect that Claimant was "suspicious" and that the College was "in the process of expelling [him]."

14.  Plaintiff was held in federal custody thereafter as the validity of documents and statements relating to his prior attendance at the Nigerian Federal College was further investigated.

15.  On March 25, 2003, while Plaintiff was being held in federal custody, on March 25, 2003, Anna Gbur, Esq., an attorney for the Bureau of Immigration and Customs Enforcement (formerly INS), sent Defendant KIMBERLY R. CLINE a fax requesting information about Plaintiff's continued status as a student.  Attached hereto as **Exhibit 2** is a true copy of that fax.

16.  On the next morning, March 26, 2003, a "Suitability Board" hearing was held in Plaintiff's absence and, as appears more fully herein, in violation of SUNY Maritime's own rules and regulations regarding disenrollment.  Attached hereto as **Exhibit 3** is a true copy of the "unanimous opinion" of the "Suitability Board" that Plaintiff be disenrolled from SUNY Maritime "immediately."

17.   On March 26, 2003, while Plaintiff was being held in federal custody, Plaintiff was summarily disenrolled by Defendants without notice or a reasonable opportunity to be heard and, as appears more fully herein, in violation of SUNY Maritime's own rules and regulations regarding disenrollment.

18.  On March 26, 2003, Defendant KIMBERLY R. CLINE sent Anna Gbur, Esq. a fax responsive to Ms. Gbur's fax of the day before, indicating that Plaintiff had been disenrolled, and attaching the "Commandant's Action on Hearing Board Dated 26 March 2003," signed by Defendant RICHARD S. SMITH. Attached hereto as **Exhibit 4** is a true copy of the aforementioned fax and attachment.

19.  On March 26, 2003, based on the news of Claimant's disenrollment, Ms. Gbur served a "Form I-261," entitled "Additional Charges of Removability," on Plaintiff, alleging that Claimant was deportable because he had failed to maintain his student status as required under his student visa. Attached hereto as **Exhibit 5** is a true copy of the transcript of the hearing held before Immigration Judge Daniel Meisner on March 26, 2003, at which both Ms. Gbur and Plaintiff were present.

20.  The aforementioned additional charge subsequently became the basis upon which Claimant was eventually deported to Nigeria on January 29, 2004.

21.  The original basis upon which Plaintiff was taken into federal custody, i.e., suspicion that he had submitted false documents and/or made false statements relating to his prior attendance at the Nigerian Federal College, turned out to be unfounded.  Attached hereto as

-4-

**Exhibit 6** is a true copy of a letter dated March 11, 2004, from the registrar at the Nigerian Federal College, explaining on page 2 thereof that "misleading information in connection with Mr. Oladokun's credentials had an adverse effect on his legal status in USA which culminated in his detention for about 11 months and subsequent deportation to Nigeria."

22.  Had Defendants not wrongfully disenrolled Plaintiff, Plaintiff would have been released from federal custody and free to resume his studies, which he had nearly completed, once the original basis upon which Plaintiff was taken into federal custody, i.e., suspicion that he had submitted false documents and/or made false statements relating to his prior attendance at the Nigerian Federal College, had been shown to be unfounded.

23.  Defendants' disenrollment of Plaintiff on March 26, 2003, was conducted in violation of  SUNY Maritime's own rules and regulations regarding disenrollment.  Attached hereto as **Exhibit 7** is a true copy of SUNY Maritime College's Organization, Operations and Regulations Manual for the Regiment of Cadets (hereinafter, "OORM")., which was applicable to Plaintiff at the time of his disenrollemnt.

24.  The OORM provides, in pertinent part (section 3404.5, subparagraphs 1 and 2, at pages 3-34 to 3-35), that the President of the College shall "promulgate a convening order" that "shall be hand delivered to the involved cadet(s)" before a "Suitability Board" hearing is convened.

25.  No President's convening order was promulgated before the  "Suitability Board" hearing was convened.

26.  No President's convening order was hand-delivered to Plaintiff before the "Suitability Board" hearing was convened

27.  The OORM provides, in pertinent part (section 3404.5, subparagraph 8, at page 3-35), that an audiotape shall be made of the hearing.

28.  No audiotape was made of the hearing.

29.   The OORM also provides, in pertinent part (section 3404.5, subparagraphs 10-11, at page 3-35), for a process of review to the President of the recommendation of the Suitability Board.  This is to occur "within five days of notification [to the Cadet] by the President that he/she has received the Board's report."

30.   The procedures as outlined at section 3404.5, subparagraphs 10-11, of the OORM were not followed following the disenrollment of Plaintiff on March 26, 2003.

31.   The putative basis for the disenrollment of Plaintiff on March 26, 2003, i.e., "Altering Official Documents and being in possession of altered Official Documents, and also Deceit and Falsehood," see Exhibit 3 hereto, is directly related to the original basis upon which Plaintiff was taken into federal custody, i.e., suspicion that he had submitted false documents and/or made false statements relating to his prior attendance at the Nigerian Federal College, which suspicion was later shown to be unfounded, see Exhibit 6 hereto.

32.   The disenrollment of Plaintiff on March 26, 2003, by defendants, was in violation of his rights as guaranteed by the Constitution of the United States.

33.   Plaintiff was deported as a direct result of his wrongful disenrollment and has suffered damages as a result.

34.   Defendants, in disenrolling Plaintiff on March 26, 2003, were acting under color of state law.

35.   One or more of the Defendants, in disenrolling Plaintiff on March 26, 2003, were acting intentionally, in their official capacities, in depriving Plaintiff of his due process rights.

36.   One or more of the Defendants, in disenrolling Plaintiff or permitting the disenrollment of Plaintiff on March 26, 2003, were acting intentionally, recklessly, and/or negligently, in their individual capacities, in depriving Plaintiff of his due process rights and/or inflicting mental distress upon him.

-6-

## FIRST CAUSE OF ACTION

37.  Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 36 as if fully set forth herein.

38.  Defendant JOHN R. RYAN was aware of and intentionally disregarded his duties under the OORM as hereinbefore described, and thereby acted intentionally, in his official capacity, in depriving Plaintiff of his due process rights.

.39  Only declaratory and equitable relief is sought under this First Cause of Action.

## SECOND CAUSE OF ACTION

40.  Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 36 as if fully set forth herein.

41.  Defendant JOHN R. RYAN was negligent or reckless with regard to his duties under the OORM as hereinbefore described, and thereby acted negligently or recklessly, in his individual capacity, in depriving Plaintiff of his due process rights and other rights and property interests guaranteed under state and federal law.

42.  This Second Cause of Action is pleaded in the alternative to the First Cause of Action.

43.  Actual damages in the amount of TWO MILLION DOLLARS ($2,000,000) are sought under this Second Cause of Action.

44.  Punitive damages in the amount of ONE MILLION DOLLARS ($1,000,000) are sought under this Second Cause of Action if the finder of fact determines that Defendant JOHN R. RYAN was reckless with regard to his duties under the OORM as hereinbefore described, and thereby acted recklessly, in his individual capacity, in depriving Plaintiff of his due process rights and other rights and property interests guaranteed under state and federal law.

-7-

### THIRD CAUSE OF ACTION

45.  Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 36 as if fully set forth herein.

46.  Defendant KIMBERLY R. CLINE was acting within the scope of her official powers and duties, and acted intentionally, in her official capacity, in depriving Plaintiff of his due process rights.

47.  Only declaratory and equitable relief is sought under this Third Cause of Action.

### FOURTH CAUSE OF ACTION

48.  Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 36 as if fully set forth herein.

49.  Defendant KIMBERLY R. CLINE was acting outside the scope of her official powers and duties, and acted intentionally, in her individual capacity, in depriving Plaintiff of his due process rights and other rights and property interests guaranteed under state and federal law, and in intentionally inflicting mental distress upon Plaintiff.

50.  This Fourth Cause of Action is pleaded in the alternative to the Third Cause of Action.

51.  Actual damages in the amount of FIVE MILLION DOLLARS ($5,000,000) are sought under this Fourth Cause of Action.

52.  Punitive damages in the amount of FIVE MILLION DOLLARS ($5,000,000) are sought under this Fourth Cause of Action.

### FIFTH CAUSE OF ACTION

53.  Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs 1 through 36 as if fully set forth herein.

54. Defendant RICHARD S. SMITH acted intentionally, in his official capacity, in depriving Plaintiff of his due process rights.

55. Only declaratory and equitable relief is sought under this Fifth Cause of Action.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(1) assume jurisdiction over this action;

(2) declare that Defendants' acts as complained of herein are violative of Plaintiff's rights under the U.S. Constitution;

(3) award Plaintiff actual damages in the aggregate amount of up to SEVEN MILLION DOLLARS ($7,000,000) as against Defendants JOHN R. RYAN and/or KIMBERLY R. CLINE if the facts as determined by the trier of fact support such an award consistently with the pleadings set forth in the Second and Fourth Causes of Action above;

(4) award Plaintiff punitive damages in the aggregate amount of up to SIX MILLION DOLLARS ($6,000,000) as against Defendants JOHN R. RYAN and/or KIMBERLY R. CLINE if the facts as determined by the trier of fact support such an award consistently with the pleadings set forth in the Second and Fourth Causes of Action above;

(5) grant such equitable as may be appropriate, including an injunction ordering that Plaintiff be reinstated to a status of enrollment in good standing at SUNY Maritime College; and

(6) award Plaintiff reasonable attorney's fees, reasonable expert witness fees, and other costs of bringing and maintaining this action.

Plaintiff additionally prays for such other, further, and different relief as this Court may deem just and proper.

Plaintiff hereby demands a jury trial as to all issues of fact.

Dated: March 24, 2006
      Port Washington, New York

JAMES M. MALONEY (JM-5297)
*Attorney for Plaintiff*
33 Bayview Avenue
Port Washington, NY 11050
(516) 767-1395
maritimelaw@nyu.edu

-9-

EXHIBIT 1



# MARITIME COLLEGE
STATE UNIVERSITY OF NEW YORK

Home    Campus Life    Enrollment Info    Academics    About    Careers    Directory



# ADMINISTRATION

**Vice Admiral John W. Craine, USN (Ret.)** President (Acting)

**Dr. Kimberly R. Cline** Vice President/Chief Operating Officer and Chief of Staff

**Dr. William Gehring** Vice President for Academic Affairs and Provost

**Captain Richard Smith** Commandant of Cadets and Master of Training Ship

**Deirdre A. Whitman** Vice President of Enrollment Management and Campus Life

**Kenneth P. Healy** Executive Director of Development

SUNY Maritime College
6 Pennyfield Avenue
Throggs Neck, New York 10465

Telephone: 718.409.7200
- in New York State: 800.654.1874
- in the Northeast: 800.642.1874

Quick Links

site comments  |  contact us  |  privacy information

http://www.sunymaritime.edu/Administration/                                      3/24/2006

EXHIBIT 2

**U.S. Department of Homeland Security**

Bureau of Immigration and Customs Enforcement

Office of the District Counsel

*970 Broad Street, Room 1104B*
*Newark, New Jersey 07102*
*973-645-2601*

VIA FACSIMILE

March 25, 2003

Dr. Kim Clien
SUNY Maritime College
Bronx, New York  10465

     Re:    Suliman OLADOKUN

Dear Dr. Clien:

I am the attorney for the Bureau of Immigration and Customs Enforcement (formerly known as INS) who is representing the government in the removal proceedings of Mr. Oladokun.  I would appreciate any information that you may provide me from Mr. Oladokun's student file, including any recent notices to him regarding his continued status as a student and his transcripts.  Please send any information by fax to my attention at 973-622-7997.

Thank you for your cooperation in this matter.

Sincerely,

Anna Gbur
Assistant District Counsel

EXHIBIT 3

State University of New York
MARITIME COLLEGE
6 Pennyfield Avenue
Fort Schuyler, Bronx, New York 10465-4198

DATE: 26 March 2003
FROM: Cdr. Christopher Zola
TO: Commandant of Cadets
SUBJ: Suleiman Board Recommendation

1. The Suitability Board for Cadet Okadokun Suleiman met this morning to consider his suitability as a member of the Regiment of Cadets. The Board also acted as a Disciplinary Board to consider the Class I charges of Altering Official Documents and being in possession of altered Official documents, and also Deceit and Falsehood.

2. The other Board members were Professor Kelly Curtin and 1/C Cadet David Cuff.

3. Cadet Suleiman was given the opportunity to appear before the Board, but he did not show up to the hearing.

4. After considering all the charges, and deeming them to be true, it is the unanimous opinion of this Board that Cadet Suleiman be disenrolled from the College immediately.

Christopher Zola

Kelly Curtin

David Cuff

cc:    VPAA
       Faculty Advisor
       Cadet File/RDO File
       Principle Clerk

EXHIBIT 4



STATE UNIVERSITY OF NEW YORK MARITIME COLLEGE

March 26, 2003

Ms. Anna Gbur
Assistant District Counsel
U.S. Department of Homeland Security
Bureau of Immigration and Customs Enforcement
970 Broad Street, Room 11048
Newark, New Jersey  07102

Dear Assistant District Counsel Gbru,

Please find the decision document/relative to the disenrollment of Okadolun
Saliman.

Based on the totality of the circumstances, the College has made the appropriate
decision and has also registered Mr. Saliman with campus university police to
prevent him for coming on campus.

If I can be any of further assistance, please give me a call at 718-409-7213.

Sincerely,

Kimberly Cline (pn)

Kimberly Cline
Chief Operating Officer

KC:pn

attachments



STATE UNIVERSITY OF NEW YORK

MARITIME COLLEGE

6 PENNYFIELD AVENUE
FORT SCHUYLER, BRONX, NEW YORK 10465-4198
TELEPHONE (718) 409-7200

APR 0  OFFO

March 26, 2003

From: Commandant of Cadets

To:   Cadet 1/c Oladukon Sulaiman

Subj: Commandant's Action on Recommendation of Hearing Board Dated 26 March 2003.

1.    I have received the recommendation of the Hearing Board convened in you case.  Based on all the evidence presented to the Board and my review of you conduct record, I concur with the Board's recommendation that you be immediately disenrolled by the Maritime College.

Richard S. Smith

cc:
Provost/Vice President for Academic Affairs
Vice President for Administration
Board Members: Cdr. C. Zola, Board Chairman
Prof. K. Curtin, Cadet 1/c D. Cuff
Faculty Advisor
Director, Student Support Services
Department Chairmen
Registrar
Regimental Commander
RDO File
Principle Clerk

EXHIBIT 5

CERTIFICATE PAGE

I hereby certify that the attached proceeding

before DANIEL MEISNER, in the matter of:

SULAIMAN OLADOKUN

A 78 711 270

Newark, New Jersey

was held as herein appears, and that this is the original

transcript thereof for the file of the Executive Office for

Immigration Review.


*Margaret V. Biefwirth*
Margaret V. Biefwirth (Transcriber)


Deposition Services, Inc.
6245 Executive Boulevard
Rockville, Maryland  20852
(301) 881-3344


September 26, 2003
(Completion Date)

U.S. Department of Justice
Executive Office for Immigration Review
Immigration Court

Matter of                                      File A 78 711 270

SULAIMAN OLADOKUN,            )          IN REMOVAL PROCEEDINGS
                             )
        Respondent            )          Transcript of Hearing

Before DANIEL MEISNER, Immigration Judge

Date: March 26, 2003              Place: Newark, New Jersey

Transcribed by DEPOSITION SERVICES, INC. at Rockville, Maryland

Official Interpreter:

Language:

Appearances:

        For the Immigration and        For the Respondent:
        Naturalization Service:

        Anna Gbur, Esquire             Kenneth Schoenfeld, Esquire

іпvр

1     JUDGE FOR THE RECORD

2          Today is March 26, 2003, Immigration Judge Daniel

3     Meisner, Newark, New Jersey.  This is a continued removal

4     proceeding in the case of Sulaiman Oladokun, A 78 711 270.  And

5     the language is English, the Service by Anna Gbur, Esquire,

6     Assistant District Counsel, respondent by Kenneth M. Schoenfeld,

7     Esquire, of Schoenfeld and Ushan, 299 Broadway, Suite 1600, New

8     York, New York 10007.

9     JUDGE TO MR. OLADOKUN

10          Q.    Sir, what is your name, please?

11          A.    Oladokun Sulaiman.

12          Q.    Could you speak a little louder?

13          A.    Oladokun Sulaiman.

14          Q.    Thank you.  Is Mr. Schoenfeld still your attorney

15    and authorized to speak for you in these proceedings?

16          A.    Yes, Your Honor.

17          Q.    The answer is yes.  Thank you.

18    JUDGE TO MR. SCHOENFELD

19          Q.    Mr. Schoenfeld, the Service has submitted to me

20    this afternoon a form I-261.  It has today's date on it.  Did you

21    receive that document?

22          A.    Yes, let me just find it, Your Honor.  Yes, I have

23    it here, Your Honor.

24          Q.    And was it properly served upon the respondent?

25          A.    Yes, he has seen it, Your Honor.

mvb

1       Q.    And do you waive a reading and explanation of that

2    document?

3       A.    Yes, we waive the reading.

4    JUDGE FOR THE RECORD

5       Exhibit 1A.

6    JUDGE TO MR. SCHOENFELD

7       Q.    Do you want to plead today or do you want time?

8       A.    We want time, Your Honor.

9       Q.    How much time?  One week, two weeks?

10      A.    One week, I just wanted to get the bond hearing

11   over with, I mean I can plead today, I mean we're definitely

12   going to deny this charge.

13      Q.    April 2nd?

14      A.    For the purposes of pleading to this charge?  I

15   could plead to it now, Your Honor.

16      Q.    Okay.

17      A.    We deny this.

18      Q.    The factual allegation is that on March 26, 2003,

19   the State University of New York Maritime College decided to

20   disenroll you, meaning the respondent, effectively immediately.

21   Is that admitted or denied?

22      A.    It's neither.  I have no way of knowing whether

23   they have or not.  This is today's date, obviously, and if they

24   have, they can take actions to have them reconsider this

25   unfortunate decision, if they have taken such.

A 78 711 270                    7                    March 26, 2003

mvp

1          Q.   Well that's why I asked you if you wanted an

2     adjournment before you plead.

3          A.   Well I'm not pleading to whether they disenrolled

4     him or not.  I'm saying he did not fail to maintain student

5     status, and by unilaterally disenrolling him doesn't mean he

6     failed to maintain status.  They may have made a mistake --

7          Q.   Okay, so you don't want any adjournment, you want

8     to plead today?

9          A.   Well I thought we were having a bond hearing.

10         Q.   We can have a bond hearing also.

11         A.   Well it's not that we can't, I mean --

12         Q.   We will have a bond hearing.

13         A.   -- that's what we were supposed to be here for.

14    You adjourned it for a bond hearing.

15         Q.   That's not correct, counsel.  We adjourned the

16    case at your request for your preparation.

17         A.   No, Your Honor, when I was here last week I served

18    some documents on the Court and the trial attorney, and we were

19    going to have a bond hearing.  You indicated at that time that if

20    I went forward on the bond hearing that you would deny any

21    request for bond at that time and you asked me to come back --

22         Q.   I indicated to you, counsel, at the time that

23    since you had given me a package of documents which I hadn't had

24    an opportunity to read, there was a possibility I would deny the

25    bond --

IIVD

```
 1          A.    Yes.

 2          Q.    -- altogether.

 3          A.    No, I understood.

 4          Q.    And I asked you if you wanted more time.  But

 5   before we got to any issue of bond, we started the removal

 6   proceeding.  We have to conduct the removal proceeding.  The

 7   Service has given you and given me today a form I-261.  As a

 8   matter of right you're entitled to time before --

 9          A.    Right.

10          Q.    -- you plead.

11          A.    I would like time, Your Honor, please.

12          Q.    Okay.  Now again, one week or two weeks?

13          A.    Let me ask you this question.  When do you conduct

14   these hearings?  Is it only on Wednesday, or?

15          Q.    Tuesday or Wednesday --

16          A.    Tuesday would be good, Your Honor.

17          Q.    -- afternoon.  That would be next Tuesday

18   afternoon, April 1st?

19          A.    Yes, Your Honor.

20          Q.    Okay.  I'll make it April 1st, 2003, at 1:00 p.m.

21   Again, your request for pleadings.

22   JUDGE FOR THE RECORD

23          And I'll give both sides a hearing notice for April 1st

24   at 1:00.

25                        HEARING CONTINUED
```

A 78 711 270                    9                    March 26, 2003

EXHIBIT 6



# FEDERAL COLLEGE OF
# FISHERIES AND MARINE
# TECHNOLOGY

P. M. B. 80063, VICTORIA ISLAND, LAGOS NIGERIA       Tel: 01-2620159
                                                     01-2622195
                                                     01-2625588

SF. 1907/Vol. I/5

Our Ref: .................................   Your Ref: .......................   11th March, ........................ 2004

OFFICE OF THE REGISTRAR

Registrar:
MR. P. O. CHIGBUE
M.P.A. B.A (Hons), P.G.D, (Advanced Magmt); MNIM.

The Consul-General
United States Consulate
2, Walter Carrington Crescent
Victoria Island
Lagos
Nigeria

Dear Sir,

## RE: MR. OLADOKUN SULAIMAN – OND MARINE ENGINEERING FRAUD PREVENTION PROGRAMME AND REPORT OF INVESTIGATION ON HIS ACADEMIC QUALIFICATIONS AND DEPORTATION TO NIGERIA

I write on behalf of the Federal College of Fisheries and Marine Technology, Lagos Nigeria to react on the US Consulate report of investigation opened on 28th February, 2003 in connection with Mr. **OLADOKUN** Sulaiman ' academic qualifications and to put the records straight specifically on the credentials of the **SUBJECT** with the following remarks:

* That the **SUBJECT** was a bona-fide registered OND Marine Engineering Student of this College from 1993 – 96.
* The **SUBJECT** graduated on 20th August, 1996 and was awarded OND Certificate in Marine Engineering at Pass Level.
* Mr. OLADOKUN was also awarded the **SEA SURVIVAL** Certificate of the College **No. cc/96/057** organized by the College Consult.
* The SUBJECT was absolutely law abiding, disciplined and hardworking but resolute in his rights/privileges during his 3 years studentship (1993 – 96). Besides, he had robust health and pleasant disposition.
* That the two members of  staff of this Institution Messrs. **EMENIKE AND ONYEKWERE** that granted interview to the Consulate  were not competent to speak on behalf of the College since they  have no business with Certificates/Documents. The two staff have since been seriously warned for the misleading information as well the interview granted to your Consulate without authority on 3r<sup>d</sup> March, 2003. Additional punishment commensurate with this misconduct, unbecoming of public officers are being worked out (for these officers.)

- There is no doubt that the **misleading** information in connection with the **Mr. Oladokun's** credentials had an adverse effect on his legal status in USA which culminated in his detention for about 11months and subsequent deportation to Nigeria.

In view of the foregoing, we plead with your Consulate to have a passionate review of Mr. OLADOKUN's case and grant him visa back to USA.   This is to facilitate the completion of his degree programme in Engineering with the State University of New York (SUNY) where he had less than 3 months to graduate.  This  would go a long way to lessen the emotional  stress and restore his dignity.  Finally, the Consulate will be contributing immensely to the realization of the goals of the new Cabotage Act  (in the area of   indigenous manpower development) by causing Mr. Sulaiman Oladokun to return and complete his programme in Marine Engineering.

Your early action on this important subject matter would be highly appreciated.

Yours faithfully,


**P.O. CHIGBUE**
*Registrar*
**For: Provost**


CC:   Mr. James M. Malloney
        Attorney at Law
        P. O. Box 551
        Port Washington NY11050



Above is for your information and necessary action, please.


**P.O. CHIGBUE**
*Registrar*
**For: Provost**

EXHIBIT 7



STATE UNIVERSITY OF NEW YORK

MARITIME COLLEGE

6 PENNYFIELD AVENUE
FORT SCHUYLER, BRONX, NEW YORK 10465-4198
TELEPHONE (718) 409-7270 · FACSIMILE (718) 409-7261

OFFICE OF THE PRESIDENT                                    1 October 2000

### Organization, Operations and Regulations Manual for the Regiment of Cadets

This manual is promulgated for the information and guidance of the Maritime College community. This manual is issued under the authority of the President of the College and is effective this date while approval of the College Council is pending.

This manual describes an orderly structure of the self-managed Regiment of Cadets. It provides written guidance for leadership and personal development of the cadets and must be executed consistently for that purpose and shall not be used unfairly or for harassment. The regulations contained in the manual are specifically for the Regiment of Cadets but will serve as a guide for staff, faculty, special students, and all who have contact with the cadets.

Cadets are expected to comply with the procedures and regulations found in this manual as well as Maritime College Instructions and Ship's Standing Orders. Ignorance of the publication is not a valid excuse for failure to comply.

This manual meets the requirements of the Code of Federal Regulations, 46 CFR 310, the Regulations and Minimum Standards for State, Territorial, or Regional Maritime Academies and Colleges, and Public Law (PL 96-453), the Maritime Training Act of 1980.

This Organization, Operations and Regulations Manual for the Regiment of Cadets supersedes all previous editions of the college's Rules and Regulations. One copy of this manual will be issued to each cadet who assumes responsibility for replacement costs, if necessary. One copy will be issued to each staff director or department office. Authorized changes may be issued by the President in serial memoranda to be entered by the cadet and recorded. Questions or suggestions on the content should be directed to the Commandant of Cadets.

David C. Brown
Rear Admiral, USMS

3404     Suitability and/or Disciplinary Hearing Boards

3404.1 Suitability and/or Disciplinary Hearing Boards are convened by written order of the President to consider and adjudicate cases of cadets who may, because of deficiencies in conduct or other performance aspects, be unsuitable for continuation at the college as members of the regiment, be unsuitable as Merchant Marine Officers or who may be charged with a Class I offense or offenses which warrant formal proceedings because disenrollment may result.

3404.2  A Hearing Board Panel will be appointed by the President for each academic year.  From these panel a specific Suitability and/or Disciplinary Hearing Board will be made up of three members; a Cadet Regimental Officer, a member of the administrative staff, and a faculty member.  The Chairperson will be appointed by the President and must, if feasible, have participated as a junior member of a previously constituted board.  Under certain circumstances one Suitability/Disciplinary Hearing Board may be appointed for a semester.

3404.3  DISCIPLINARY HEARING BOARD.  A Disciplinary Hearing Board shall be convened by written order of the President to adjudicate cases of cadets charged with Class I offenses or offenses which warrant formal procedures because disenrollment could result.  In each case, the offense will be recommended for referral to a Disciplinary Hearing Board, if deemed appropriate due to its gravity, by the Commandant of Cadets.  Each Class I offense does not necessarily require a Disciplinary Hearing Board.  The duties of the Disciplinary Hearing Board shall include the following:

> 1. Gathering and examining all available evidence and/or witnesses relative to the offense(s) charged.
> 2. Ascertaining all the facts of the charge(s).
> 3. Examining available records and/or witnesses relative to the overall  performance of the cadet charged.
> 4. Determining findings of fact, developing opinions, and making recommendations in the case, and submission of a written report to the President.
> 5. During examination of available records the Disciplinary Hearing Board may consider questions of suitability, with notification to the cadet charged.

3404.4 SUITABILITY HEARING BOARDS.  A Suitability Hearing Board shall be convened by written order of the President to consider cases of cadets who may, because of deficiencies in conduct or other performance aspects, be unsuitable for continuation at the college as members of the Regiment of Cadets.  Assignment of a Suitability Hearing Board is not a form of punishment.  If there is also a grave offense, the Suitability Hearing Board may also, concurrently, act as a Disciplinary Hearing Board for that offense.  The duties of the Suitability Hearing Board include:

> 1. Gathering and examining all available records and/or witnesses relative to the cadet's performance as both a student and member of the Regiment of Cadets.
>
> 2. Developing an opinion relative to the cadet's overall fitness for continuation at the college and his prospects for a successful career in the Merchant Marine.
>
> 3. Submission of a written report to the President, setting forth findings of fact, opinions developed, and making a recommendation as to whether to allow the cadet to continue at the college or whether the cadet should be disenrolled for reasons of unsuitability, as considered appropriate in the case.

3404.5 SUITABILITY and/or DISCIPLINARY HEARING BOARDS PROCEDURES.  The following are procedures for conducting Suitability/Disciplinary Hearing Boards convened by the President.

> 1. The President will promulgate a convening order that sets forth:
>
> > a. The type of hearing (Suitability, Disciplinary, or both).
> > b. The date, time, and place of the hearing.
> > c.  The Chairperson and members of the board.
> > d. The purpose of the hearing, to include any charges preferred.

e. The appropriate reference articles in this manual for the type hearing specified.
f. A restriction order if deemed warranted.
g. Provisions for a delivery endorsement to indicate time and date.

2. A copy of the President's convening order shall be hand delivered to the involved cadet(s). If a cadet is not on campus as required, then there is liability for administrative disenrollment. The cadet shall acknowledge receipt by signature on the delivery endorsement of the original order. Unless special circumstances warrant otherwise, and are agreed to in writing by the cadet(s), at least five (5) days shall elapse between the aforementioned delivery of the convening order and the convening of the hearing. The cadet(s) may request, and be granted, an extension of up to five (5) additional days for cause. Such request shall be made in writing, to the chairperson, at least forty-eight (48) hours prior to the ordered convening time.

3. The cadet(s) may request that any member of the board, including the chairperson, be replaced for cause. Such request shall be made in writing outlining the basis for removal to the chairperson at least forty-eight (48) hours prior to the ordered convening time. The President may approve the request and appoint replacement members as required.

4. The cadet(s) may obtain a member of the faculty/staff as an advisor or may obtain outside counsel at his/her own expense. The name of the advisor or counsel shall be made known to the chairperson and the Commandant of Cadets within forty-eight (48) hours after delivery of the convening order.

5. Copies of board documents and names of board witnesses to be examined at the hearing shall be provided to the cadet(s) by the chairperson, and the cadet(s) shall provide the chairperson with any documents and names of witnesses to be examined at the hearing.

6. The conduct of the hearing shall not be bound by the technical rules of evidence. The board will hear any testimony or receive any evidence that will contribute to a full and fair determination of the case. The cadet(s) may cross examine any witness and examine any documents presented during the hearing. The cadet(s) may have as witness, any person or persons who have testimony of fact to present, and to submit any relevant document or letters of character reference, and character witnesses, within the discretion of the chairperson.

7. At the discretion of the chairperson, the hearing will be open to the public as long as circumstances permit. However, at the request of the cadet(s) concerned the chairperson shall close the hearing.

8. An audio tape recording will be made of the hearing.

9. The board shall submit a written report on the hearing, to the President, as soon as possible. The President shall cause a copy of the report, less enclosures, to be hand delivered to the cadet(s).

10. The cadet(s) will be permitted to submit a written statement to the President and/or request a personal appointment prior to the President's final action. This must occur within five days of notification by the President that he/she has received the Board's report.

11. The President will review the report of the board and any statement by the cadet(s) and render his decision. The President's decision will be promulgated by a letter to the cadet(s).

3404.5 Because hearing boards can lead to severe sanctions, cadets are advised to notify and discuss their problems with their parents/guardians when ordered to appear before a hearing board.

ORIGINAL