UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------X
                                  :
SULAIMAN OLADOKUN,                 :
                                  :
                Plaintiff,      :
                                  :
      -against-                  :
                                  :   06 cv 2330(KMW)
JOHN R. RYAN, individually and in  :   <u>Opinion and Order</u>
his official capacity as President :
of State University of New York    :
Maritime College, KIMBERLY R.      :
CLINE, individually and in her     :
official capacity as Vice President:
for Administration and/or Chief    :
Operating Officer of State         :
of New York Maritime College, and  :
RICHARD S. SMITH, in his official  :
capacity as Commandant of Cadets of:
State University of New York       :
Maritime College,                  :
                    Defendants.     :
----------------------------------X

WOOD, U.S.D.J.:

      Plaintiff Oladokun brings this action against Defendants
John R. Ryan, Kimberly R. Cline, and Richard S. Smith pursuant to
42 U.S.C. § 1983.  Plaintiff alleges that Defendants disenrolled
him from the State University of New York Maritime College ("SUNY
Maritime") in violation of his rights under the Due Process
Clause of the Fourteenth Amendment.  By motion dated October 2,
2006, Defendants move to dismiss Plaintiff's Complaint pursuant
to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).  For
the reasons stated below, Defendants' motion is GRANTED in part
and DENIED in part.

I. Background

    A. The Parties

Plaintiff, a Nigerian citizen, was an Engineering student at SUNY Maritime from August 30, 2000 until March 26, 2003, when he was disenrolled.[1]  He was deported on January 29, 2004 due to his failure to maintain student status as required under his student visa.

Defendant Ryan was the President of SUNY Maritime at the time of Plaintiff's disenrollment, and is currently the Chancellor of the State University of New York.  He is sued both individually and in his official capacity.  Defendant Cline was Maritime College's Vice President/Chief Operating Officer and Chief of Staff at the time of Plaintiff's disenrollment, and is currently Vice Chancellor and Chief Financial Officer of the State University of New York.  She is sued both individually and in her official capacity.  Defendant Smith is SUNY Maritime's Commandant of Cadets.  He is sued only in his official capacity.

    B. Plaintiff's Apprehension and Disenrollment

On or about March 7, 2003, two Joint Terrorism Task Force

---

[1] For the purpose of considering Defendants' motion to dismiss, the Court must accept as true the allegations in the Complaint.  See Blue Tree Hotels Invs., Ltd. v. Starwood Hotels & Resorts WorldWide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). "[T]he complaint includes any written instrument attached to it as an exhibit and any statements or documents incorporated into it by reference."  Paulemon v. Tobin, 30 F.3d 307, 308-309 (2d Cir. 1994).

agents apprehended Plaintiff, based on their suspicion that he had submitted false documents in obtaining a student visa.  The Bureau of Immigration and Customs Enforcement ("ICE") held Plaintiff in custody while they investigated the validity of his documents.

On March 25, 2003, while Plaintiff was still being held in federal custody, ICE attorney Anna Gbur sent Defendant Cline a fax requesting information about Plaintiff's enrollment status at SUNY Maritime.  The next morning, on March 26, 2003, SUNY Maritime's "Suitability Board" held a hearing in Plaintiff's absence.  This hearing allegedly took place without notice to Plaintiff and in violation of SUNY Maritime's own rules.  See Compl. ¶¶ 17, 25, 26.

In its hearing, the Suitability Board considered Plaintiff's "suitability as a member of the Regiment of Cadets."  See Compl. ex. 3.  The Suitability Board also acted as a "Disciplinary Board" to consider charges by SUNY Maritime of "Deceit and Falsehood" by Plaintiff, as well as charges that Plaintiff had altered official documents and was in possession of altered official documents.  See id.  In a one-sentence opinion, the Suitability Board stated that it had considered the charges against Plaintiff, "deem[ed] them to be true," and recommended that Plaintiff be immediately disenrolled.  See id.  That same day, Defendant Smith signed a memo concurring with the

Suitability Board's decision and thereby officially disenrolling Plaintiff.  See Compl. ex. 4.  Also on the same day, Defendant Cline sent Ms. Gbur a fax stating that Plaintiff had been disenrolled.  See id.  Plaintiff did not have any opportunity to make a statement before his final disenrollment.  See Compl. ¶¶ 29-30.

Plaintiff also alleges that according to SUNY Maritime's Organization, Operations, and Regulations Manual ("SUNY Maritime's Manual"), Defendant Ryan, as President, was responsible for convening the Suitability Board, ensuring that his convening order was hand-delivered to Plaintiff, and rendering the final disenrollment decision.  Defendant Ryan allegedly did not follow these procedures.[2]  See Compl. ¶¶ 24-26, 29-30.

Following Plaintiff's disenrollment from SUNY Maritime, Ms. Gbur filed an additional charge against Plaintiff for removability, stating that he was deportable because he had failed to maintain his student status as required under his student visa.  Plaintiff was deported to Nigeria on January 29, 2004, on the basis of this new charge. See Compl. ¶¶ 19-20.

---

[2] Plaintiff and Defendants dispute which version of SUNY Maritime's Organization, Operations, and Regulations Manual was in effect at the time of Plaintiff's disenrollment.  See Def. Mem. of Law at 12-14, Pl. Opp. Mem. of Law at 10-14.  This dispute of fact is not properly considered at the motion to dismiss stage, where the Court must accept all of Plaintiff's allegations as true. See Blue Tree Hotels Invs., 369 F.3d at 217.

II. <u>Discussion</u>

     A. <u>Rule 12(b)(6) Motion</u>

     A defendant may move to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted.  In weighing a motion to dismiss, the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor." <u>Allaire Corp. v. Okumus</u>, 433 F.3d 248, 249-50 (2d Cir. 2006) (internal quotation marks omitted).  "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1969 n.8 (2007).

     Defendants argue that the Complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim because (1) the Complaint does not allege sufficient personal involvement by Defendants; (2) the Complaint does not state a cognizable due process claim; (3) Defendants are immune from civil rights actions seeking money damages; and (4) Plaintiff is not entitled to an injunction reinstating his enrollment.

     1. <u>Personal Involvement by Defendants</u>

     To survive a motion to dismiss, "a plaintiff alleging a Section 1983 . . . claim must set forth specific and detailed

factual allegations of personal involvement as opposed to bald assertions and conclusory terms." Vazquez v. Parks, No. 02 cv 1735, 2003 WL 1442087, at *9 (S.D.N.Y. Feb. 4, 2003) (internal quotation marks omitted).  A plaintiff may demonstrate personal involvement by alleging that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of . . . [the alleged victim] by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).  The Court holds that Plaintiff has alleged sufficient personal involvement by Defendants Ryan and Smith in his disenrollment,[3] but did not allege sufficient personal involvement by Defendant Cline.

### a. Defendant Ryan

Plaintiff alleges that as President of SUNY Maritime, Defendant Ryan was personally responsible for convening the Suitability Board, notifying Plaintiff of his hearing, and reviewing the Suitability Board's findings.  Defendant Ryan's alleged failure to adhere to SUNY Maritime's rules and

---

[3] The Court addresses whether the alleged circumstances surrounding Plaintiff's disenrollment states a due process violation in Section II.A.2.

6

regulations allegedly resulted in Plaintiff's disenrollment without notice or an opportunity to be heard.  See Compl. ¶¶ 24-29.  Because these allegations state that Defendant Ryan directly participated in Plaintiff's allegedly unconstitutional disenrollment, Plaintiff has pled sufficient personal involvement by Defendant Ryan to survive a motion to dismiss.

### b. Defendant Smith

Plaintiff alleges that Defendant Smith reviewed the Suitability Board's disenrollment opinion and rendered the decision that officially disenrolled Plaintiff from SUNY Maritime.  Compl. ¶ 18, ex. 4.  Because these allegations indicate that Defendant Smith directly participated in Plaintiff's allegedly unconstitutional disenrollment, Plaintiff has pled sufficient personal involvement by Defendant Smith to survive a motion to dismiss.

### c. Defendant Cline

Plaintiff does not make specific factual allegations that Defendant Cline personally participated in his disenrollment.  Plaintiff alleges that Defendant Cline received a fax from ICE requesting information about Plaintiff's enrollment status and subsequently faxed a letter informing ICE that Plaintiff had been disenrolled.  See Compl. ¶¶ 15, 18.  However, these allegations do not indicate that Defendant Cline was involved in SUNY Maritime's decisionmaking process.  Likewise, although Plaintiff

7

asserts that he was "disenrolled by Defendants," <u>see</u> Compl. ¶ 17; <u>see also</u> Compl. ¶¶ 22, 32, 34-36, such general statements do not indicate what role Defendant Cline played in his disenrollment and do not demonstrate that she was personally involved. Furthermore, SUNY Maritime's <u>Manual</u> does not indicate that an administrator in Defendant Cline's position would be responsible for disenrollment decisions.  <u>See</u> Compl. ex. 7.  The Court therefore concludes that Plaintiff has not pled sufficient personal involvement by Defendant Cline to survive a motion to dismiss.  Accordingly, Plaintiff's third and fourth causes of action are DISMISSED.[4]

  2. <u>Plaintiff's Due Process Claim</u>

Defendants argue that Plaintiff's disenrollment did not violate his due process rights.  To state a Fourteenth Amendment due process claim, Plaintiff must allege that (1) his disenrollment from SUNY Maritime deprived him of either a "liberty" or "property" interest, <u>see</u> <u>Bd. of Curators of the Univ. of Missouri v. Horowitz</u>, 435 U.S. 78, 82 (1978); and (2) the process the State provided him was "constitutionally [in]adequate," <u>see</u> <u>Zinermon v. Burch</u>, 494 U.S. 113, 126 (1990). The Court holds that Plaintiff has alleged sufficient facts to state a due process claim against Defendant Ryan and Defendant

---

[4] The Complaint's third and fourth causes of action state Plaintiff's claims against Defendant Cline.

Smith (collectively, the "remaining Defendants").

a. Plaintiff's Liberty or Property Interest

Plaintiff has alleged the deprivation of a property interest.  New York law recognizes an "'implied contract' between [a college or university] and its students," requiring "the academic institution [to] act in good faith in its dealing with its students." Olsson v. Bd. of Higher Educ., 49 N.Y.2d 408, 414 (N.Y. 1980).  "Such an implied contract, recognized under state law, provides the basis for a property interest that would be entitled to constitutional protection." Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991).  Consequently, "a Rule 12(b)(6) dismissal of a student's claim is improper where the contention is that the institution's action was 'motivated by bad faith or ill will unrelated to academic performance.'" Id. (quoting Clements v. County of Nassau, 835 F.2d 1000, 1004 (2d Cir. 1987)).

Plaintiff's allegations support an inference that the remaining Defendants disenrolled Plaintiff because they bore him ill will and wanted to facilitate his deportation.  Plaintiff alleges that upon receiving a request from ICE for information about his enrollment status, the remaining Defendants participated in a hastily-convened Suitability Board hearing process to summarily disenroll him.  See Compl. ¶¶ 17-18, 24-26, 29-30.  Plaintiff also alleges that this Suitability Board

hearing violated SUNY Maritime's own procedural rules, and denied him notice of the Suitability Board hearing and the opportunity to attend the hearing or respond to the Board's conclusion. See Compl. ¶¶ 17-18. The entire process of disenrollment allegedly took place in a single day, and ICE was notified of Plaintiff's disenrollment immediately.

Because Plaintiff alleged facts supporting an inference that the remaining Defendants were motivated by ill will in disenrolling him, Plaintiff has alleged the deprivation of a property interest under New York law.

b. Adequacy of Process

Defendants argue that even if Plaintiff was deprived of a liberty or property interest, he had all of the process he was due because he could challenge his disenrollment after-the-fact in an Article 78 proceeding in New York State court. The Court disagrees, and concludes that Plaintiff has adequately alleged that the process available to him to challenge his disenrollment was inadequate.

When "high-ranking official[s]" with "final authority over significant matters" are responsible for the deprivation of a liberty or property interest, "due process requires that a state afford persons 'some kind of hearing' prior to depriving them of a liberty or property interest." Diblasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003) (citations omitted).

10

Plaintiff states that he did not have a reasonable opportunity to participate in any form of pre-deprivation hearing before his disenrollment. See Compl. ¶ 17. The Complaint also alleges that the remaining Defendants were high-ranking officials with final authority over significant matters. Defendant Ryan was President of SUNY Maritime at the time of his disenrollment. See Compl. ¶ 3, ex. 1. Furthermore, although Plaintiff and Defendants present conflicting versions of the SUNY Martime Manual, both versions indicate that Defendant Ryan had decisionmaking authority over disenrollment at SUNY Maritime. See Compl. ex. 7 (version of SUNY Maritime Manual stating President renders final disenrollment decisions); Ploughman Dec. ex. 2 (version of SUNY Maritime Manual stating President hears appeals of disenrollment decisions). Likewise, Defendant Smith was a high-level administrator at the time of Plaintiff's disenrollment. See Compl. ¶ 5, ex. 1. Plaintiff further alleges that Defendant Smith officially disenrolled him. See Compl. ¶ 18, ex. 4. Because the remaining Defendants were allegedly high-ranking officials with final authority over significant matters, their alleged failure to provide Plaintiff with an opportunity to participate in a pre-deprivation hearing constitutes inadequate process.

In conclusion, Plaintiff has adequately alleged that his disenrollment by the remaining Defendants deprived him of a

11

property interest in good faith treatment by SUNY Maritime without adequate process.  Accordingly, the Court concludes that Plaintiff has stated a claim that the remaining Defendants violated his due process rights.

### 3. Immunity

Defendants also argue that they are immune from damages under theories of both absolute and qualified immunity, and that Plaintiff's claims for damages should therefore be dismissed. However, the remaining Defendants are unable to meet the requirements for either absolute or qualified immunity.

### a. Absolute Immunity

"Absolute immunity is accorded to judges and prosecutors functioning in their official capacities and, under certain circumstances, is also extended to officials of government agencies performing certain functions analogous to those of a prosecutor or a judge." Diblasio, 344 F.3d at 296-97 (internal quotation marks omitted).  Government actors who seek absolute immunity "bear the burden of showing that public policy requires an exemption of that scope." Butz v. Economou, 438 U.S. 478, 506 (1978).  The remaining Defendants have not met this burden.

First, in Wood v. Strickland, the Supreme Court held that absolute immunity does not apply to "adjudicators in [a] school disciplinary process," because "it would not sufficiently increase the ability of school officials to exercise their

discretion in a forthright manner to warrant the absence of a remedy for students subjected to intentional or otherwise inexcusable deprivations." 420 U.S. 308, 319-20 (1975), <u>overruled on other grounds by</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982); <u>see also</u> <u>Brown v. W. Conn. State Univ.</u>, 204 F. Supp. 2d 355, 362-63 (D. Conn. 2002) (applying <u>Strickland</u> and holding that "absolute immunity should [not] apply in the context of student discipline").  Defendants do not show that SUNY Maritime's disenrollment procedures raise policy issues different from those in <u>Strickland</u>.  Therefore, they have not met their burden of showing that public policy requires they be granted absolute immunity.

Furthermore, Defendants fail to demonstrate that SUNY Maritime's disenrollment process shares "enough of the 'characteristics of the judicial process'" to merit absolute immunity, and that "the officials themselves were functioning in a manner sufficiently analogous to a judge or prosecutor." <u>Diblasio</u>, 344 F.3d at 297-98 (citations omitted).  SUNY Maritime's disenrollment process lacks at least three factors that are "characteristic[] of the judicial process." <u>See</u> <u>Cleavinger v. Saxner</u>, 474 U.S. 193, 202 (1985).  First, Defendants provide no evidence that the Suitability Board process is bound by precedent.  <u>See</u> <u>id.</u> (stating that "the importance of precedent" is a characteristic of the judicial process).  Second,

Defendants provide no evidence that the process is adversarial in nature.  See id. (stating that "the adversary nature of the process" is a characteristic of the judicial process).  For example, the version of the SUNY Maritime Manual offered by Defendants indicates that SUNY Maritime's disenrollment proceedings are not bound by rules of evidence and that Suitability Board members have both investigatory and adjudicatory roles.  See Ploughman Dec. ex. 2, SUNY Maritime Manual §§ 3404.4, 3404.5(6); see also Diblasio, 344 F.3d at 299 (stating that evidentiary rules and the presence of a neutral decisionmaker are "key elements of an adversarial process").  Third, Defendants do not demonstrate that error is sufficiently "correctab[le] . . . on appeal."  See Cleavinger, 474 U.S. at 202.  Although the version of the SUNY Maritime Manual put forward by Defendants indicates that Suitability Board disenrollment decisions may be appealed to the President, Defendants provide no information about the President's standard of review.[5]

Accordingly, the Court denies Defendants' claim for absolute immunity.

<u>      </u>                    b. Qualified Immunity

---

[5] Although Plaintiff could have objected to his disenrollment in an Article 78 proceeding, Article 78 proceedings "are generally not considered adequate avenues for 'appeal'" so as to qualify officers for absolute immunity.  Diblasio, 344 F.3d at 299.

In Saucier v. Katz, the Supreme Court established a two-step inquiry for determining whether a government official is eligible for qualified immunity.  First, the Court "determine[s] whether the alleged facts demonstrate that a defendant violated a constitutional right." Iqbal v. Hasty, 490 F.3d 143, 152 (2d Cir. 2007) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Second, if the allegations show that a defendant violated a constitutional right, the Court "determine[s] whether that right was clearly established at the time of the challenged action." Id.  "[Q]ualified immunity may only be granted on a motion to dismiss if the available record adequately supports the defendants' claim that it was objectively reasonable for them to believe that" their behavior was constitutional.  Almonte v. City of Long Beach, 478 F.3d 100, 110 (2d Cir. 2007) (internal quotation marks omitted).

Applying the Saucier two-step inquiry, the Court concludes that Defendants do not qualify for qualified immunity at this stage of litigation.  First, as discussed in Section II.A.2, Plaintiff alleges a violation of his right to due process under the Fourteenth Amendment.  Second, the available record indicates that Plaintiff's constitutional right was clearly established. In order to be "clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson

15

v. Creighton, 483 U.S. 635, 640 (1987).  In this action, the contours of Plaintiff's right are clear.  Plaintiff alleges that his disenrollment denied him his property interest in good faith dealings with SUNY Maritime, without notice or the opportunity to be heard.  As early as 1991, the Second Circuit recognized that New York's "implied contract" between universities and their students provides the basis for a property interest entitled to due process protection.  See Branum v. Clark, 927 F.2d 698, 706 (2d Cir. 1991).  Likewise, as early as 1985, the Second Circuit held that post-deprivation remedies are insufficient when the government actor in question is a high-ranking official with final authority over significant matters.  Dwyer v. Regan, 777 F.2d 825, 832 (2d Cir. 1985).  Finally, notice and the opportunity to be heard itself is an "elementary and fundamental requirement of due process."  See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

Because Plaintiff alleges constitutional violations that are clearly established, the Court concludes that "officers of reasonable competence" could not disagree that Defendants' actions were illegal.  See Malley v. Briggs, 475 U.S. 335, 341 (1986).  The Court therefore denies Defendants' claim for qualified immunity.

4. Plaintiff's Request for Injunctive Relief

Defendants argue that Plaintiff is not entitled to one of

16

the forms of relief that he seeks, namely, that the Court "grant
. . . an injunction ordering that Plaintiff be reinstated to a
status of enrollment in good standing at SUNY Maritime College."
See Compl. p. 9.  The Court agrees that reinstating Plaintiff's
enrollment would be an inappropriate remedy.  See Raditch v.
United States, 929 F.2d 478, 481 (9th Cir. 1991) ("A violation of
procedural rights requires only a procedural correction, not the
reinstatement of a substantive right to which the claimant may
not be entitled on the merits.").  Accordingly, the court strikes
Plaintiff's request for an injunction reinstating his enrollment.
However, Plaintiff may be able to demonstrate that another form
of equitable relief, such as an injunction requiring a new
disenrollment hearing, is appropriate.  The Court therefore
declines to strike Plaintiff's request for other "such equitable
[relief] as may be appropriate."  See Compl. p. 9.

    B. Rule 12(b)(1) Motion

    A defendant may move to dismiss a claim under Federal Rule
of Civil Procedure 12(b)(1) for lack of subject matter
jurisdiction.  In a Rule 12(b)(1) motion, the plaintiff bears the
burden of proving jurisdiction.  See Robinson v. Overseas
Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994).  However,
where a court evaluates a motion to dismiss based solely on the
pleadings and supporting affidavits, "the plaintiff need only
make a prima facie showing of jurisdiction."  Id.

Defendants argue that the Complaint should be dismissed pursuant to Rule 12(b)(1) because Plaintiff is indirectly challenging his final immigration order of removal.  <u>See</u> 8 U.S.C. §§ 1252(a)(1), 1252(b)(9) (stating that final orders of removal are subject to judicial review only on petition for review in the courts of appeal).  Defendants' argument is unavailing, because Plaintiff's action challenges his disenrollment from SUNY Maritime, not his immigration removal.  Plaintiff does not challenge the proceedings leading up to his order of removal or request that this Court overrule his order of removal.  <u>See</u> Compl. p. 9.  Plaintiff's removal proceeding and deportation also are not factual predicates to his due process challenge. Plaintiff could have raised the same due process challenge to his disenrollment had he never been subject to removal proceedings. Plaintiff's action therefore does not constitute a challenge to his removal.[6]

Accordingly, the Court concludes that because Plaintiff states a federal cause of action pursuant to 42 U.S.C. § 1983, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

---

[6] <u>Turkmen v. Ashcroft</u>, which is relied on by Defendants, is not to the contrary.  In <u>Turkmen</u>, a district court considered a due process challenge by a group of aliens to their detention by immigration authorities, and dismissed their claims for lack of subject matter jurisdiction.  <u>See</u> 2006 U.S. Dist. LEXIS 39170, at *75-80 (S.D.N.Y. 2006).  Unlike in <u>Turkmen</u>, however, Plaintiff's action does not arise from his immigration removal proceedings or from any decision by immigration authorities.

III. Conclusion

For the reasons set forth above, the Court dismisses Plaintiff's third and fourth causes of action, and strikes Plaintiff's request for "an injunction ordering that Plaintiff be reinstated to a status of enrollment in good standing at SUNY Maritime College." Defendants shall answer the remaining claims in the Complaint no later than November 20, 2007. No later than October 30, 2007, Plaintiff and Defendants shall submit a joint letter to the Court detailing their available dates in November 2007 for a Rule 16(b) pretrial conference.

SO ORDERED.

DATED:    New York, New York
          October 23 , 2007

                                    _____
                                         KIMBA M. WOOD
                                    United States District Judge

19