UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

SULAIMAN OLADOKUN,

                       Plaintiff,

           - against -

JOHN R. RYAN, individually and in his official capacity
as President of State University of New York Maritime
College, KIMBERLY R. CLINE, individually and in her
official capacity as Vice President for Administration
and/or Chief Operating Officer of State University of
New York Maritime College, and RICHARD S. SMITH,
in his official capacity as Commandant of Cadets of State
University of New York Maritime College,

                       Defendants.

-------------------------------------------------------------------X

06 CV 2330
(KMW) (KNF)

(ECF case)


## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT JOHN R. RYAN'S MOTION FOR SUMMARY JUDGMENT


JAMES M. MALONEY (JM-5297)
*Attorney for Plaintiff*
33 Bayview Avenue
Port Washington, New York 11050

(516) 767-1395
maritimelaw@nyu.edu

PRELIMINARY STATEMENT

This memorandum of law is submitted in opposition to Defendant John R.

Ryan's motion for summary judgment.  Counsel frames the key issue as follows:

> The issue to be decided in the present motion is whether Admiral
> Ryan had any personal involvement in the Spring 2003 Suitability
> Board proceeding that led, directly, to plaintiff's disenrollment from
> SUNY Maritime's regiment of cadets and, indirectly, to his
> deportation. The evidence shows, and plaintiff does not actually
> dispute, that Admiral Ryan did not initiate, conduct, or determine the
> result of that Suitability Board proceeding.  His only role in the
> process, under the rules applicable then and now, would have been to
> hear any appeal plaintiff might have brought.  Plaintiff brought none.

Memorandum of Law in Support of Defendant John R. Ryan's Motion for

Summary Judgment ("Movant's Brief") at 1-2 (footnote omitted).

DISCUSSION

Framing the issue in the terms set forth above, however, is reminiscent of

Arthur Conan Doyle's "dog that didn't bark": a colorable and indeed plausible

basis for Admiral Ryan's personal liability is his *failure* to have taken any action

whatsoever to ensure: (a) that proper procedures were followed in convening the

Suitability Board (so as to provide Plaintiff proper notice and an opportunity to be

heard, which was not done, and which accordingly affected his ability to appeal

the decision); (b) that proper procedures were followed in conducting the hearing

so that it could be meaningfully appealed (for example, no audiotape of the

hearing was made as required, *cf.* Complaint at ¶¶ 27-28; Exhibit B to Ploughman

Declaration at § 3403.5, subparagraph 8); and (c) that Plaintiff was actually given a fair opportunity to review the decision and participate meaningfully in an appeal (which was impossible given both the paucity of the record[1] and the fact that Plaintiff was in federal custody with very limited access to a telephone and an overriding crisis of imminent deportation (as Defendants admit, Movant's Brief at 3, Plaintiff's "disenrollment rendered him automatically ineligible to remain in the United States on his student visa . . . [and there was] no further attempt to establish the grounds for which deportation had originally been sought.").

It should be noted[2] that the reason that Plaintiff was in federal custody in the first place was because of a call to the Joint Terrorism Task Force ("JTTF") from someone within the College administration to the effect that Plaintiff was "suspicious" and that the College was "in the process of expelling [him]."  The articulated "suspicion" related to the authenticity of documentation submitted by

_____

[1] The substantive record of the disenrollment "proceeding" consists only of the single-page "unanimous opinion" of the Suitability Board members that is annexed as Exhibit 3 to the Complaint, which notes that "Cadet Suleiman [*sic*] was given the opportunity to appear before the Board, but he did not show up to the hearing."  Paragraph 3.  The charges, which were "deem[ed] to be true," paragraph 4, were not supported by any evidence or testimony that was in any way recorded or made a part of the record.  Indeed, from the record it would appear that *there was no testimony or evidence presented*, and that the disenrollment was the direct and sole result of Plaintiff's failure to appear, which, as was known to (and indeed caused by) College personnel, was because he was in federal custody at the time.

[2] Factual assertions in this paragraph are taken from the Complaint (Docket Sheet Item # 1) and its annexed exhibits, and are entitled to be taken as true for purposes of this summary judgment motion, especially where, as here, there has been no substantive discovery.

Plaintiff in obtaining his F-1 student visa in or about January 2000, specifically the validity of documents and statements relating to his prior attendance at the Nigerian Federal College of Fisheries and Marine Technology ("Nigerian Federal College"). Complaint, ¶¶ 12-13. This suspicion, as it turned out, was unfounded. Exhibit 6 to Complaint. Moreover, College personnel were on notice that Plaintiff was in custody at the time of the hearing not only because College personnel had started the chain of events that led to his apprehension by JTTF, but also because on March 25, 2003, Anna Gbur, Esq., an attorney for the Bureau of Immigration and Customs Enforcement ("ICE," formerly INS), sent the College's Vice President for Administration a fax requesting information about Plaintiff's continued status as a student. Exhibit 2 to Complaint.

The Deputy Commandant of Cadets[3] thus convened the Suitability Board

[3] That the Deputy Commandant and not the Commandant did so is expressly admitted at ¶5 of Movant's Rule 56.1 Statement, but the significance of the fact that such is in contravention of the Manual is downplayed at footnote 5 (page 8) of Movant's Brief. Since the Deputy Commandant reports to the Commandant (see Deposition of Richard S. Smith on limited question of which version of the Manual was in effect, transcript previously provided to Chambers with correspondence dated April 11, 2008, at page 37, lines 8-10), this might at first blush seem to be of little consequence, but as no substantive discovery has yet occurred it is unclear whether a different result might have obtained had the Manual been followed. For example, although it must be assumed that the Deputy Commandant was not aware that Plaintiff was in custody and thus unable to appear, it is not known what information the Commandant had in that regard, and nothing in his limited deposition or his declaration sheds any light on the question. Further, allowing the convening of a Suitability Board to be delegated to a subordinate would make the stated reasons from having amended the Manual moot, for the President could simply have delegated the duty of convening Suitability Boards to the Commandant without any real need to amend the Manual to so provide.

-3-

and the March 26, 2003 hearing in Plaintiff's absence notwithstanding the Vice

President for Administration's actual knowledge of Plaintiff's confinement at the

time the hearing was held.  It is undisputed that the Commandant of Cadets reports

to the President, as does the Vice President for Administration.  Indeed, there

appears to be no other person to whom both report.  Accordingly, the only person

in the College's hierarchy who could have borne the responsibility of coordinating

the College's actions so as to ensure that proper notice and a true opportunity to be

heard were provided to Plaintiff was the College's President, John R. Ryan.


<u>THE COMPLAINT AND THE MANUAL</u>

Notwithstanding the foregoing, this Court may find that the Complaint as

drafted fails to make out any claim arising out of the acts or omissions of

Defendant Ryan to the extent that those acts or omissions relate to or arise from

his duties *beyond* those set forth in the Manual (referred to in the Complaint at the

relevant paragraphs 38 and 41, corresponding to the First and Second Causes of

Action, as the "OORM," for  Organization, Operations and Regulations Manual

for the Regiment of Cadets).  At the time the Complaint was drafted, Plaintiff

reasonably believed that the version of the Manual that was attached as an exhibit

thereto, and which had been produced earlier in state-court litigation, was the

version in effect at the time of Plaintiff's disenrollment.  That version provided that the President, not the Commandant, had the duty to convene Suitability Boards.  Limited discovery on the sole question of which version was in effect at that time having now been completed, Plaintiff concedes that an amended version, placing the duty to convene Suitability Boards with the Commandant, appears to have been in effect, and Plaintiff has no evidence to the contrary (although it is not clear that Plaintiff was ever actually notified of the amendment, see Deposition of Richard S. Smith on limited question of which version of the Manual was in effect, transcript previously provided to Chambers with correspondence dated April 11, 2008, at pages 43-44).

Rule 15(a) of the Federal Rules of Civil Procedure states that leave to amend a pleading "shall be freely given when justice so requires."  In fact, a court may even *sua sponte* grant leave to amend.  *Straker v. Metropolitan Transit Authority*, 333 F. Supp.2d 91, 102 (E.D.N.Y. 2004).

**It is accordingly respectfully requested that Plaintiff be given leave to amend the causes of action as against Defendant Ryan to reflect the full scope of Defendant Ryan's duties to Plaintiff, whether arising out of the Manual or from another source.**

ARGUMENT

A motion for summary judgment should be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2550, 91 L. Ed.2d 265 (1986). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed.2d 202 (1986); *Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202).

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. *See Anderson*, 477 U.S. 242, 255; *Vann v. City of New York*, 72 F.3d 1040, 1048-49 (2d Cir. 1995).

Here, while it is now beyond dispute that, under the provisions of the revised Manual, Defendant Ryan had no duty to convene the Suitability Board, it is unclear (substantive discovery having not yet begun) whether his duties as President would have required him to have taken some action to ensure: (a) that

-6-

proper procedures were followed in convening Suitability Boards in general and this one in particular; (b) that proper procedures were followed in conducting the hearing so that it could be meaningfully appealed; and (c) that Plaintiff was actually given a fair opportunity to review the decision and participate meaningfully in an appeal to the President of the College.

As noted above, it is undisputed that the Commandant of Cadets reports to the President, and that the Deputy Commandant (not the Commandant, as required under the amended Manual) convened the Suitability Board that led to Plaintiff's disenrollment and deportation.  But it is not known (substantive discovery having not yet begun): (a) whether Defendant Ryan ever instructed the Commandant of Cadets not to delegate the task of convening Suitability Boards to a subordinate; (b) whether, had the Commandant of Cadets convened Plaintiff's Suitability Board, Plaintiff would have been given a full and fair opportunity to appear and, later, to appeal (since it has also not been discovered whether the Commandant of Cadets knew that Plaintiff was in custody at the time, even though it may be assumed that the Deputy Commandant did not, since the latter actually convened the Suitability Board, and since the only record of the proceeding notes that "Cadet Suleiman [sic] was given the opportunity to appear before the Board, but he did not show up to the hearing, " Exhibit 3 to the Complaint, see also footnote

1, *supra*); (c) whether Defendant Ryan himself was aware that Plaintiff was in custody at the time that Plaintiff's Suitability Board was convened and the hearing held (a fax from ICE having been sent to Ryan's subordinate the day before, *see supra* page 3); or (d) who in fact was the person the within the College administration who called the Joint Terrorism Task Force stating that Plaintiff was "suspicious" and that the College was "in the process of expelling [him]."

While it is true that disputed facts that are not material to the issue at hand will not defeat summary judgment, *see Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *Lane v. New York State Electric & Gas Corp.*, 18 F.3d 172, 176 (2d Cir. 1994), here substantive discovery has not yet begun and to dismiss this named Defendant in his individual capacity simply because an amendment to the Manual relieved him of the duty of convening Suitability Boards would be both premature and, at the present stage of the proceedings, grossly unfair to Plaintiff.

## RULE 56(f) CONSIDERATIONS

Here, Defendant Ryan has moved for summary judgment in his favor before any discovery has gone forward beyond that relating to the limited question of which version of the Manual was in effect at the time of Plaintiff's disenrollment. Fed.R.Civ.P. 56(f) provides, as interpreted by court opinions, that "when a party

facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion." *Miller v. Wolpoff & Abramson, L.L.P.* 321 F.3d 292, 303 (2d Cir. 2003) (quoting *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir.2001)). It has further been held that summary judgment should be granted only if, "after discovery, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Id*. (quoting *Hellstrom v. United States Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir.2000)). Accordingly, Plaintiff submits herewith a Rule 56(f) affirmation.


<u>CONCLUSION</u>

For all of the foregoing reasons , Defendants' motion should be DENIED at this time.  It is further respectfully requested that Plaintiff be given leave to amend the Complaint with respect to the causes of action asserted against Defendant Ryan so as to reflect the full scope of Defendant Ryan's duties to Plaintiff, whether arising out of the Manual or from another source, and that appropriate discovery be taken following such amendment of the pleadings before summary

judgment in favor of Defendant Ryan is considered.

Dated:        June 23, 2008
              Port Washington, New York


                                        _____/s/_____
                                        James M. Maloney (JM-5297)
                                        *Attorney for Plaintiff*
                                        33 Bayview Avenue
                                        Port Washington, New York

                                        (516) 767-1395
                                        maritimelaw@nyu.edu