UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                              :

SULAIMAN OLADOKUN,                :

                         :

                      Plaintiff,    :

                         :

             -against-          :               <u>Opinion & Order</u>

                         :               06 cv 2330 (KMW)

JOHN R. RYAN, individually and in his  :
official capacity as President of State    :
University of New York Maritime College  :
Maritime College, and RICHARD S.      :
SMITH, in his official capacity as       :
Commandant of Cadets of State University :
of New York Maritime College,        :

                         :

                    Defendants.   :
------------------------------------------------------X
WOOD, U.S.D.J.:

       Plaintiff Sulaiman Oladokun ("Plaintiff") brings this action against Defendants

John R. Ryan ("Ryan") and Richard S. Smith ("Smith") (collectively "Defendants")

pursuant to 42 U.S.C. § 1983 ("Section 1983") and applicable state law.  Plaintiff alleges

that Defendants disenrolled him from the State University of New York Maritime

College ("SUNY Maritime") in violation of the Due Process Clause of the Fourteenth

Amendment to the U.S. Constitution and New York state law.  Plaintiff sues Defendants

in their official capacities for equitable relief.  Plaintiff also sues Ryan in his individual

capacity for monetary damages.

       The parties have cross-moved for summary judgment. Plaintiff moves for

summary judgment solely on his First Cause of Action, which alleges that Ryan is

individually liable for Plaintiff's deprivation of due process.  (Pl. Mem. at 1.)  Defendants

purport to move for summary judgment on all claims, but their motion fails to address

Plaintiff's Second Cause of Action, which alleges that Ryan is individually liable under state law for breaches of "contractual and/or quasi-contractual obligations to Plaintiff." (Am. Compl. ¶ 72.)  Accordingly, the Court reaches only the question of whether either party is entitled to summary judgment on Plaintiff's First and Third Causes of Action, which respectively allege individual and official liability under Section 1983.

For the reasons stated below, the Court (1) DENIES Defendants' motion on the issue of liability for failing to provide adequate notice and a hearing that comported with due process, and <u>sua sponte</u> GRANTS summary judgment in favor of Plaintiff on those issues (Plaintiff's Third Cause of Action); and (2) GRANTS Ryan's motion for summary judgment on the issue of his individual liability for allegedly failing to conduct a substantive, pre-appeal review of Plaintiff's disenrollment decision, and DENIES Plaintiff's motion for summary judgment on that issue (Plaintiff's First Cause of Action).

I.    Background

A.    The Parties

Plaintiff, a Nigerian citizen, was an Engineering student and cadet at SUNY Maritime from August 30, 2000 until March 26, 2003, when he was disenrolled.  He was deported on January 29, 2004 due to his failure to maintain student status as required by his student visa.

Ryan was the President of SUNY Maritime from June 2002 to June 2005, during which time Plaintiff was disenrolled.  (Ryan Decl. ¶ 1.)  He is sued both individually and in his official capacity.  Smith has served as SUNY Maritime's Commandant of the Regiment of Cadets since August 2001.  (Smith Decl. ¶ 1.)  He is sued only in his official capacity.

B.     Plaintiff's Apprehension and the Convening of the Suitability/Disciplinary
       Hearing Board

On March 7, 2003, two Joint Terrorism Task Force agents arrested Plaintiff at the SUNY Maritime campus—with SUNY Maritime's knowledge—based on suspicion that he had submitted false documents in obtaining a student visa.  (Cline Decl.¶10; Def. Exh. 10; Def. Exh. 7.)  The Bureau of Immigration and Customs Enforcement ("ICE") held Plaintiff in custody pending an investigation into the validity of his documents.  (Def. Exh. 9.)  He remained in custody until his deportation in January 2004.  (Def. Exh. 9; Pl. Response to Def. Rule 56.1 Stmt.¶21.)

On March 17, 2003, officials at SUNY Maritime convened a Suitability/Disciplinary Hearing Board (the "Board")[1] to consider whether, in light of the foregoing, Plaintiff was fit to remain a member of the Regiment of Cadets.  (Smith Decl.¶ 3; Def. Exh. 12.)  The original convening order, dated March 17, 2003, stated that Plaintiff's hearing would occur on March 27, 2003.  (Def. Exh. 12.)  A memorandum dated March 19, 2003 rescheduled the hearing to March 24, 2003.  (Id.)  On March 19, 2003, Smith sent the original order, together with the memorandum reflecting the rescheduled hearing date (collectively, the "Notice") to Plaintiff's off-campus address via two different overnight couriers.  (Smith Decl.¶7; Pl. Response to Def. Rule 56.1 Stmt.¶ 29; Def. Exh. 12.)

---

[1]     According to SUNY Maritime's rules and regulations ("revised Manual"), Suitability/Disciplinary Boards
                consider/adjudicate cases of cadets who may, because of deficiencies in conduct or other performance aspects, be: 1. unsuitable for continuation at the College as members of the regiment, 2. unsuitable as Merchant Marine Officers; or 3. who are [sic] charged with Class I offenses or offenses for which warranting formal procedures for which disenrollment could result.
(Def. Exh. 11,§3404.1.)

Despite Defendants' representation that the hearing would occur on March 24, 2003, however, it is undisputed that the hearing actually occurred on March 26, 2003. (Def. Exh. 13; Def. Rule 56.1 Stmt.¶30; Pl. Response to Def. Rule 56.1 Stmt.¶30; Ans. to Am. Compl.¶35; Ryan Decl.¶12.)  Defendants have offered no evidence that they advised Plaintiff that his hearing had been rescheduled to March 26, 2003.

     C.     <u>The Suitability/Disciplinary Board Proceedings</u>

On March 25, 2003, an ICE attorney sent SUNY Maritime a fax requesting information about Plaintiff's enrollment status.  (Def. Exh. 15.)  The next morning, SUNY Maritime's Board convened in Plaintiff's absence.  (Def. Exh. 13.)  The Board considered Plaintiff's "suitability as a member of the Regiment of Cadets" as well as the "Class I charges"[2] against Plaintiff, which included "Deceit and Falsehood," alteration of official documents, and possession of altered official documents.   (Def. Exh. 13.)

Plaintiff alleges that the Board proceedings were conducted in violation of SUNY Maritime's internal regulations as codified in the revised <u>Manual</u>.  According to the revised <u>Manual</u>, the Suitability Hearing Board must "[gather] and examin[e] all available records and/or witnesses relative to the cadet's performance as both a student and member of the Regiment of Cadets."  (Def. Exh. 11,§ 3404.4(1).)  The Board must "hear any testimony or receive any evidence that will contribute to a full and fair determination of the case."   (<u>Id.</u> § 3404.5(6).)  Because Plaintiff's Suitability Board also acted as a Disciplinary Board (<u>see</u> Def. Exh. 13), it had the additional duty of "gathering and examining all available evidence and/or witnesses relative to the offense(s) charged."

---

[2]     The revised <u>Manual</u> states that Class I offenses "involve a grave infraction of the college's rules and regulations.  Recommended punishment may range from demerits to disenrollment." (Def. Exh. A at 3-31 (Dkt. Entry No. 40-3).)

(Def. Exh. 11, § 3404.3(1).)   Notwithstanding these requirements, however, Smith acknowledged that "[t]here were no live witnesses, and there was no substantive testimony" at Plaintiff's hearing.  (Smith Decl. ¶ 9.)  Defendants' Exhibit 13, which is a copy of the Board's report recommending Plaintiff's disenrollment, states not that the Board considered "documentary <u>evidence</u>," but that the Board "consider[ed] all the <u>charges</u>, and deem[ed] them to be true."  (Def. Exh. 13) (emphasis added).

Smith was then required, pursuant to the revised <u>Manual</u>, to "<u>review</u> the report of the Board" prior to rendering his decision as to Plaintiff's culpability and punishment. (Def. Exh. 11, § 3404.5(11)) (emphasis added).  Smith signed a memorandum on March 26, 2003 concurring with the Board's decision, thereby disenrolling Plaintiff.  (Def. Exh. 14; Smith Decl. ¶ 11.)  After the issuance of Smith's disenrollment order, SUNY Maritime notified ICE of Plaintiff's disenrollment on March 26, 2003.  (Cline Decl. ¶ 13; Def. Exh. 16.)  Consequently, on January 29, 2004, Plaintiff was deported due to his failure to maintain student status as required by his student visa.

II.    Procedural History

The procedural history of this case is detailed in the Court's prior opinions, familiarity with which is assumed.  See Oladokun v. Ryan, No. 06 Civ. 2330, 2009 WL 857460 (S.D.N.Y. Mar. 31, 2009), and 2007 WL 3125317 (S.D.N.Y. Oct. 23, 2007).

Plaintiff's Amended Complaint, filed in April 2009, is the subject of the pending cross-motions for summary judgment.  The Amended Complaint alleges that Plaintiff was summarily disenrolled by Defendants Ryan and Smith without notice or a reasonable opportunity to be heard, and in violation of SUNY Maritime's rules and regulations. (Am. Compl. ¶ 19, 29.)

The Amended Complaint also asserts allegations relating to Ryan's personal involvement in Plaintiff's claimed deprivation of due process.  Specifically, Plaintiff alleges that, as President, Ryan was responsible for protecting the due process rights of cadets in connection with disciplinary proceedings brought against them by SUNY Maritime.  (Am. Compl.¶57.)  In support of the allegation that Ryan disenrolled Plaintiff, Plaintiff references Section 3402.2 of the revised Manual, which states that "[t]he President of the Maritime College is the only officer authorized to disenroll a cadet."  (Id. ¶61.)  Alternatively, Plaintiff argues that Ryan knew or should have known that Plaintiff was disenrolled without Ryan's proper authority, and "should have taken steps to remedy the wrong."  (Id.¶63.)

 Plaintiff alleges that Ryan and Smith are liable for the foregoing conduct in their official capacities (id.¶3, 6), and asks the Court to grant "such equitable relief as may be appropriate, including but not limited to an injunction ordering that the President of SUNY Maritime College cause Plaintiff's official transcript to be made available to him and/or that Plaintiff be reinstated to a status of enrollment in good standing at SUNY Maritime."  (Id. at 15¶(5).)  Plaintiff also alleges that Ryan is individually liable for Plaintiff's deprivation of due process, and seeks actual and punitive damages.  (Id. at 14-15¶(3), (4).)

The parties have cross-moved for summary judgment.  Plaintiff moves for partial summary judgment holding Ryan individually liable for his alleged failure to ensure that (a) proper procedures were followed in convening Plaintiff's Suitability/Disciplinary Board; and (b) SUNY Maritime's internal procedures were followed in conducting the Board hearing.  (Pl. Mem. at 1; Pl. Reply at 1.)  Defendants move for summary judgment

on Plaintiff's Section 1983 claims:  Ryan and Smith contend that they are entitled to summary judgment on Plaintiff's official capacity claims because their alleged conduct "did not violate any of Plaintiff's constitutional rights"  (Def. Mem. at 2);  Ryan contends that he is entitled to summary judgment on Plaintiff's individual capacity claim because "the undisputed record establishes that Ryan was not personally responsible for whatever alleged acts may be attributed to his subordinates."  (Id. at 2.)

III.    Applicable Law for All Claims

      A.    Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009).  A "material" fact is one that might "affect the outcome of the suit under the governing law."  Id.  The moving party bears "the burden of demonstrating that no material fact exists."  Miner v. Clinton County, N.Y., 541 F.3d 464, 471 (2d Cir. 2008) (citing McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007)).

In resolving this inquiry, the Court must construe the evidence in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  Sledge v. Kooi, 564 F.3d 105, 108 (2d Cir. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50, 255 (1986)).  In opposing the motion for summary judgment, the non-moving party may not rely on "conclusory allegations or

unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998), or on mere denials or unsupported alternative explanations of its conduct.   See S.E.C. v. Grotto, No. 05-5880, 2006 WL 3025878, at *7 (S.D.N.Y. Oct. 24, 2006).   Rather, the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor.   Anderson, 477 U.S. at 255.   To avoid summary judgment, all that is required of the non-moving party is a showing of sufficient evidence supporting the claimed factual dispute as to require a judge or jury's resolution of the parties' differing versions of truth.   See Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 206 (2d Cir. 2006) (citing Anderson, 477 U.S. at 248-49).

Under certain circumstances, district courts possess the "inherent power" to grant summary judgment sua sponte.   First Fin. Ins. Co. v. Allstate Interior Demolition Corp., 193 F.3d 109, 114, 119 (2d Cir. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986)); Kalderon v. Finkelstein, No. 08 Civ. 9440, 2010 WL 3359473, at *5 (S.D.N.Y. Aug. 25, 2010).   Where the record indicates that all of the evidentiary materials that a party might submit in response to a motion for summary judgment are before the court, "a sua sponte grant of summary judgment against that party may be appropriate if those materials show that no material dispute of fact exists and that the other party is entitled to judgment as a matter of law."   First Fin. Ins. Co., 193 F.3d at 115 (quotation and citation omitted).   "The record must, therefore, reflect the losing party's inability to enhance the evidence supporting its position and the winning party's entitlement to judgment."   Id.

While courts are advised to provide notice before granting summary judgment sua sponte, the Second Circuit has nonetheless observed that courts may grant summary judgment against the moving party without notice or opportunity to defend.   Bridgeway

Corp. v. Citibank, 201 F.3d 134, 139 (2d Cir. 2000) (citing Coach Leatherware Co., Inc. v. AnnTaylor, Inc., 933 F.2d 162, 167 (2d Cir. 1991) ("[The] court need not give notice of its intention to enter summary judgment against the moving party.")).  In the absence of notice, the court need only determine whether the facts were fully developed such that the moving party would suffer no "procedural prejudice."  Bridgeway Corp., 201 F.3d at 139 (citing Coach Leatherware Co., Inc., 933 F.2d at 167).  A party is procedurally prejudiced if it is surprised by the court's action in a way that results in the party's failure to present evidence in support of its position.  Bridgeway Corp., 201 F.3d at 139.  If, however, the party cannot claim to have been surprised, or if, "notwithstanding its surprise, the party had no additional evidence to bring, it cannot plausibly argue that it was prejudiced by the lack of notice."  Id. at 140.  Moreover, the threat of prejudice is "greatly diminished if the court's sua sponte determination is based on issues identical to those raised by the moving party."  Id. (quotation and citation omitted).  The likelihood of procedural prejudice is greatly reduced "if the moving party speaks to those issues in the course of the district court proceedings."  Id.

    B.    Procedural Due Process

It is well-settled that due process concerns are implicated by the disciplinary decisions of public institutions of higher education.  See, e.g., Goss v. Lopez, 419 U.S. 565, 576 n.8 (1975) ("Since the landmark decision of the Court of Appeals for the Fifth Circuit in Dixon v. Ala. State Bd. of Educ., 294 F.2d 150, cert. denied, 368 U.S. 930 (1961), the lower federal courts have uniformly held the Due Process Clause applicable to decisions made by tax-supported educational institutions to remove a student from the institution long enough for the removal to be classified as an expulsion."); Flaim v. Med.

Coll. of Ohio, 418 F.3d 629, 633 (6th Cir. 2005); Albert v. Carovano, 824 F.2d 1333,

1339 n.6 (2d Cir. 1987), reh'g granted and modified on other grounds, 839 F.2d 871,

reh'g en banc and vacated on other grounds, 851 F.2d 561 (1988); Gorman v. Univ. of

R.I., 837 F.2d 7, 12 (1st Cir. 1988) ("[A] student's interest in pursuing an education is

included within the Fourteenth Amendment's protection of liberty and property.");

Rubino v. Saddlemire, No. 05 cv 1955, 2007 WL 685183, at *4 (D. Conn. Mar. 1, 2007);

Donohue v. Baker, 976 F. Supp. 136, 147 (N.D.N.Y. 1997) ("[A]n expulsion from

college is a stigmatizing event which implicates a student's protected liberty interest.").

Because Defendants do not dispute that Plaintiff was entitled to due process when faced

with the prospect of disenrollment, the Court turns to the question of what process

Plaintiff was due. Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

From the "cryptic and abstract words" of the Due Process Clause, Mullane v.

Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950), the Supreme Court has

determined that individuals whose protected interests are at stake are entitled to "notice

and an opportunity to be heard." Dusenbery v. United States, 534 U.S. 161, 167 (2002)

(citing United States v. James Daniel Good Real Prop., 510 U.S. 43, 48 (1993)). See also

Mathews v. Eldridge, 424 U.S. 319, 333 (1976). Notice must be "reasonably calculated,

under all the circumstances, to apprise interested parties of the pendency of the action and

afford them an opportunity to present their objections." Mullane, 339 U.S. at 314; Rosa

R. v. Connelly, 889 F.2d 435, 439 (2d Cir. 1989) (citing Mullane). Courts must apply

this "reasonableness under the circumstances" framework when confronted with

questions regarding the adequacy of the method used to provide notice. Dusenbery, 534

U.S. at 167-68. Beyond safeguarding the "fundamental" requirements of notice and a

hearing, however, due process "calls for such procedural protections as the particular situation demands." Mathews, 424 U.S. at 334; see also Winnick v. Manning, 460 F.2d 545, 549 (2d Cir. 1972) ("Due process does not invariably require the procedural safeguards accorded in a criminal proceeding. Rather, the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.").

IV.    Analysis of Claims

      A.    Alleged Insufficiency of Notice

Plaintiff claims that he was deprived of due process of law by Defendants' failure to provide him sufficient notice in convening the Suitability/Disciplinary Hearing Board. Defendants contend that they are entitled to summary judgment on this claim because SUNY Maritime made reasonable efforts to provide notice to Plaintiff.

For the following reasons, the Court DENIES Defendants' motion for summary judgment on this claim, and sua sponte GRANTS summary judgment in favor of Plaintiff.

      1.    Applicable Law

Due process does not mandate "actual" notice, but rather a method of notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314; Rosa R., 889 F.2d at 439. "The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." Mullane, 339 U.S. at 314; see also Jones v. Flowers, 547 U.S. 220, 229 (2006).

Just as with the means of notice, "the content of the notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action.'" Brody v. Vill. of Port Chester, 434 F.3d 121, 130 (2d Cir. 2005) (quoting Mullane, 339 U.S. at 314). This includes the "corollary requirement that the notice must be of such nature as reasonably to convey the required information." Brody, 434 F.3d at 130 (quotation and citation omitted). According to the Brody court, such "required information" includes "as much notice as is practicable to inform [Plaintiff] of legal proceedings against his property." Id.

Because the essential principle of due process is that the deprivation of a protected interest be preceded by notice and an opportunity to be heard, Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985), it is axiomatic that the notice provided must accurately relate when and where the absentee may contest the deprivation. Strickland v. Inlow, 519 F.2d 744, 746 (5th Cir. 1975) ("The failure to inform the plaintiffs of the time and place of the Board meeting was violative of their right to procedural due process, for fundamental to that concept is adequate notice and the opportunity to be heard."). See also Goss, 419 U.S. at 584 (requiring "effective" notice); Mullane, 339 U.S. at 314 (the opportunity to be heard "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to . . . contest"). Unless the recipient is adequately informed of when the hearing will occur, the hearing serves no purpose, "and resembles more a scene from Kafka than a constitutional process." See Gray Panthers v. Schweiker, 652 F.2d 146, 168-69 (D.C. Cir. 1980) (discussing the analogous requirement that persons be adequately informed of the reasons for denial of a legal interest).

-12-

2.      Application of Law to Facts

No genuine issue of material fact exists as to the content of the Notice sent to Plaintiff.  Although Defendants' Notice advised Plaintiff of a Board hearing that would occur on March 24, 2003, the hearing actually occurred two days later.  Defendants have offered no evidence that they informed Plaintiff that his hearing had been rescheduled to March 26, 2003.

The Court accordingly finds that Defendants failed to provide "as much notice as is practicable" to inform Plaintiff of the date of the proceedings against him, and that Plaintiff was deprived of due process of law.  Brody, 434 F.3d at 130.  Notice must be "reasonably calculated" to inform Plaintiff of his opportunity to present objections to the contemplated deprivation.  See Mullane, 339 U.S. at 313.  Notice reflecting a hearing date of March 24 was not reasonably calculated to advise Plaintiff of a hearing that actually occurred on March 26.  It is irrelevant that Plaintiff was in government custody and could not appear on either hearing date, given that "the constitutionality of a particular procedure for notice is assessed ex ante, rather than post hoc."  Jones, 547 U.S. at 231.

Although Plaintiff did not move for summary judgment on the deficiency of Defendants' Notice, the Court sua sponte grants summary judgment in his favor on this issue, because there are no material facts in dispute and Plaintiff is entitled to judgment as a matter of law.  See, e.g., First Fin. Ins. Co., 193 F.3d at 115; Continental Cas. Co., 2010 WL 2834898, at *6.  Defendants cannot "plausibly" claim that they are "procedurally prejudiced" by the Court's sua sponte action.  Bridgeway Corp., 201 F.3d at 139. Defendants have moved for summary judgment on all of Plaintiff's § 1983 claims (Def.

Mem. at 2), including the alleged constitutional deficiency of (a) the method of Notice sent to Plaintiff (Am. Compl. ¶ 19, 28, 32-34); and (b) the content of that Notice (Am. Compl. ¶ 35). Defendants explicitly admitted in their Rule 56.1 response the inaccuracy of the Notice they sent to Plaintiff. They thus had "significant incentive to put forward any compelling evidence in support of their summary judgment motion," since the law prevents this Court from drawing favorable inferences on their behalf. Coach Leatherware Co., Inc., 933 F.2d at 167-68. Their failure to submit such compelling evidence in support of the entirety of their motion—that is, not only in support of the adequacy of the method of Notice, but also in support of the adequacy of the content of the Notice—does not constitute "procedural prejudice" within the meaning of Bridgeway Corp.

In light of its decision that the Notice sent to Plaintiff was constitutionally defective, the Court need not reach the issues of: (a) whether, because Defendants knew or should have known that Plaintiff was incarcerated at the time the Notice was mailed to Plaintiff's off-campus address, such Notice was not reasonably calculated to apprise Plaintiff of the Board hearing (see Pl. Opp. at 10); or (b) whether service by overnight mail is not reasonably calculated to advise a student living off-campus, such as Plaintiff, of the pendency of an action against him (see Pl. Reply at 2 n.2).

The Court thus DENIES Defendants' motion for summary judgment on Plaintiff's claim of defective notice, and sua sponte GRANTS summary judgment in favor of Plaintiff.

B.      Alleged Violations of SUNY Maritime's Internal Regulations

Plaintiff contends that Defendants deprived him of due process as a result of Board proceedings that violated several of SUNY Maritime's internal regulations as codified in the revised Manual.  Defendants argue that they are entitled to summary judgment on this claim because any alleged violations of the revised Manual are not constitutionally significant.  (Def. Opp. at 6-7; Def. Mem. at 12-14.)  For the reasons that follow, the Court DENIES Defendants' motion for summary judgment on this claim, and sua sponte GRANTS summary judgment in favor of Plaintiff.

Because federal constitutional standards, rather than state law, define the requirements of procedural due process, Russell v. Coughlin, 910 F.2d 75, 78 n.1 (2d Cir. 1990), not every deviation from a state agency's regulations is of constitutional significance.  Winnick, 460 F.2d at 550; see also Jones v. Bd. of Governors of Univ. of N.C., 704 F.2d 713, 717 (4th Cir. 1983); Bills v. Henderson, 631 F.2d 1287, 1298 (6th Cir. 1980); Bates v. Sponberg, 547 F.2d 325, 330 (6th Cir. 1976).   Rather, an agency's violation of its own regulations is unconstitutional only if those regulations are necessary to afford due process.  See Bowens v. N.C. Dep't of Human Res., 710 F.2d 1015, 1019 (4th Cir. 1983) (citing United States v. Caceras, 440 U.S. 741, 751-52 (1979)).  Similarly, to the extent that a state's procedures embody the fundamental guarantees grounded in the Due Process Clause, "a significant departure from those procedures would as well violate the underlying constitutionally based guarantees."  Jones, 704 F.2d at 717; see also Cobb v. The Rector and Visitors of Univ. of Va., 69 F. Supp. 2d 815, 828 (W.D. Va. 1999) (citing Jones).

Once the constitutional minima have been satisfied, however, a state agency's non-compliance with promised, yet "gratuitous procedural protections" does not

constitute a due process violation.  <u>Levitt v. Univ. of Tex. at El Paso</u>, 759 F.2d 1224, 1231 (5th Cir. 1985); <u>see also</u> <u>Hennigh v. City of Shawnee</u>, 155 F.3d 1249, 1256 (10th Cir. 1998); <u>McDarby v. Dinkins</u>, 907 F.2d 1334, 1338 (2d Cir. 1990); <u>Brown v. Texas A & M Univ.</u>, 804 F.2d 327, 335 (5th Cir. 1986); <u>Rubino</u>, 2007 WL 685183, at *8 n.6.

In light of the foregoing authorities, the Court finds that the following undisputed deviations from the revised <u>Manual</u> deprived Plaintiff of due process: (1) Defendants' failure to provide sufficient notice in convening the Board; and (2) Defendants' disenrollment of Plaintiff absent any evidentiary basis.  The Court accordingly DENIES Defendants' motion for summary judgment on these claims, and <u>sua sponte</u> GRANTS summary judgment in favor of Plaintiff.[3]

1.      Alleged Insufficiency of Notice

As explained in Section IV.A, <u>supra</u>, Plaintiff is entitled to summary judgment on his claim that Defendants' inaccurate Notice was constitutionally deficient.  For the same reasons, Plaintiff is entitled to summary judgment on the issue of whether Defendants' deviation from the revised <u>Manual</u>—which requires that the notice "set forth . . . [t]he date . . . of the hearing" (Def. Exh. 11,§3404.5(1)(b))—deprived him of due process.  The Court finds that the revised <u>Manual</u> requires Defendants to advise cadets of the <u>actual</u> date on which their hearings will occur, a requirement that embodies the fundamental guarantees of due process where deprivations of constitutionally protected interests are at

---

[3]      As a result of the disposition of this claim, the Court need not address the constitutional significance of Defendants' other alleged deviations from the revised <u>Manual</u>, such as: (a) the failure of Smith to convene the Board; (b) the failure to hand-deliver the convening order to Plaintiff; (c) the deprivation of Plaintiff's right to a meaningful appeal; (d) the failure to record the Board hearing; (e) the failure to hand-deliver the disenrollment order to Plaintiff; and (f) the failure to allow five business days prior to rendering the final disenrollment decision.

stake.  Jones, 704 F.2d at 717.  Defendants "significant[ly] departed" from this internal regulation when they held Plaintiff's hearing on a date not reflected in his Notice, and without advising Plaintiff that the hearing was rescheduled.  Accordingly, the Court sua sponte GRANTS summary judgment in favor of Plaintiff on this claim.  See supra Section IV.A.2; First Fin. Ins. Co., 193 F.3d at 115; Continental Cas. Co., 2010 WL 2834898, at *6.

> 2.    Alleged Failure to Consider Any Evidence Before Disenrolling Plaintiff

Plaintiff is entitled to summary judgment on the claim that Defendants violated the revised Manual, and deprived him of due process, by failing to have any evidentiary basis for their disenrollment decision.[4]

Although due process rights in the context of academic discipline are not co-extensive with such rights in the civil or criminal contexts, students must nonetheless be afforded "some" type of hearing prior to being deprived of a protected interest.  Goss, 419 U.S. at 579, 583-84; see also Giglio v. Dunn, 732 F.2d 1133, 1135 (2d Cir. 1998) ("due process requires only that a hearing be held . . . in a meaningful manner.") (emphasis added).  The Supreme Court in Goss clarified that students facing even temporary suspension are entitled, as a matter of due process, to "an explanation of the evidence the authorities have."  Goss, 419 U.S. at 581 (emphasis added).

---

[4]    Plaintiff acquired a letter, dated March 2004, which appears to cast doubt on whether he submitted false documents to SUNY Maritime.  (Pl. Exh. 1.)  On the basis of this after-acquired evidence, Plaintiff objects to Defendants' failure to address the "non-viability" of the charges that led to Plaintiff's disenrollment.  (Pl. Mem. at 3 n.2.) Plaintiff cannot, of course, argue that Defendants were required to consider, during the March 2003 disenrollment proceeding, evidence that did not come to light until March 2004.  In any event, because the Court finds that Defendants violated Plaintiff's due process rights by failing to have an evidentiary basis for the disenrollment decision, the foregoing issue is moot.

The revised <u>Manual</u> similarly required Plaintiff's Suitability/Disciplinary Board to "[gather] and examin[e] all available records and/or witnesses relative to the cadet's performance," and "all available <u>evidence</u> and/or witnesses relative to the offense(s) charged." (<u>See</u> <u>supra</u> Section I.C; Def. Exh. 11, § 3404.3(1), 3404.4(1).) Defendants' deviation from these evidentiary procedures, and their failure to have an evidentiary basis for their disenrollment decision, violated Plaintiff's due process rights by depriving him of a "meaningful" hearing. <u>See, e.g.</u>, <u>Giglio</u>, 732 F.2d at 1135; <u>Jackson v. Hayakawa</u>, 761 F.2d 525, 527 (9th Cir. 1985); <u>Rubino</u>, 2007 WL 685183, at *8.

The undisputed record indicates that Defendants failed to consider <u>any</u> evidence before recommending Plaintiff's disenrollment. Defendants' Rule 56.1 Statement provides that "[t]he Board considered the documentary evidence" prior to recommending Plaintiff's expulsion. (Def. Rule 56.1 Stmt.¶31 (citing Smith Decl.¶11 & Def. Exh. 13).) Yet, the evidence to which Defendants cite offers no support for this claim. Smith acknowledged that "[t]here were no live witnesses, and there was no substantive testimony" at Plaintiff's hearing. (Smith Decl. ¶ 9.) Moreover, the Board's recommendation to disenroll Plaintiff states not that the Board considered "documentary <u>evidence</u>," but that the Board "consider[ed] all the <u>charges</u>, and deem[ed] them to be true." (Def. Exh. 13) (emphasis added). "Charges" are not "evidence," however, and Defendants offer no explanation of how, in the absence of such evidence, the Board could "deem" the charges "true." <u>See, e.g.</u> <u>Gleason v. Univ. of Minn.</u>, 104 Minn. 359, 364 (Minn. 1908) (absent evidence, the fact that plaintiff was "charged" with insubordination "does not warrant the inference that he was guilty.").

Smith similarly failed to establish that he had any evidentiary basis for his disenrollment decision. The revised <u>Manual</u> requires Smith to "<u>review</u>" the report of the Board prior to rendering his decision as to a cadet's culpability and punishment. (Def. Exh. 11, § 3404.5(11)) (emphasis added). Yet, Smith states in his declaration not that he undertook a substantive "review" of the Board's report, but that he merely "concurre[d] with its recommendation of disenrollment." (Smith Decl. ¶ 11.) Smith offers no facts or evidence demonstrating that his concurrence was the product of a substantive evidentiary review, as required by the plain text of the revised <u>Manual</u>.[5] (<u>See</u> Def. Rule 56.1 Stmt. ¶ 32-33; Smith Decl. ¶ 11-12.)

Although Plaintiff's due process rights did not entitle him to a "full-dress judicial hearing," <u>Dixon</u>, 294 F.2d at 159, the seriousness of the penalty that awaited him at the very least required the disenrollment decision to have some evidentiary basis.[6] <u>See</u> <u>Goss</u>, 419 U.S. at 581. It is undisputed that Defendants and the Board did not consider any actual evidence prior to disenrolling Plaintiff. Their failure to do so violated the revised <u>Manual</u>, and deprived Plaintiff of due process. The Court thus concludes, <u>sua sponte</u>, that

---

[5]     In Smith's March 26, 2003 letter to Plaintiff advising him of his disenrollment, Smith states that "[b]ased on all the evidence presented to the Board and my review of you [sic] conduct record, I concur with the Board's recommendation that you be immediately disenrolled by the Maritime College." (Def. Exh. 14.) In light of the facts recounted above, however, this statement is insufficient to create a triable issue of fact as to whether the Board or Smith considered any evidence prior to disenrolling Plaintiff.

[6]     Following the Supreme Court's decision in <u>Goss</u>, the lower courts have recognized that due process requires some evidentiary basis for school disciplinary decisions. <u>See, e.g.</u>, <u>Nash v. Auburn Univ.</u>, 812 F.2d 655, 668 (11th Cir. 1987) (applying a "substantial evidence" standard); <u>Jackson</u>, 761 F.2d at 527 (same); <u>Dixon</u>, 294 F.2d at 157, 159 (requiring a "reasonable and constitutional ground for expulsion"); <u>Rubino</u>, 2007 WL 685183, at *8 ("substantial evidence"). The Second Circuit apparently has not opined on the issue of what evidentiary grounds for expulsion are constitutionally sufficient. The Court need not reach this issue, however, because the Defendants' failure to consider <u>any</u> evidence prior to disenrolling Plaintiff violates even the minimal dictates of <u>Goss</u>. <u>See</u> <u>Goss</u>, 419 U.S. at 581.

Plaintiff is entitled to summary judgment on this claim.  See supra Section IV.A.2;

Bridgeway Corp., 201 F.3d at 139; First Fin. Ins. Co., 193 F.3d at 115; Continental Cas.

Co., 2010 WL 2834898, at *6.

     C.    Plaintiff's Individual Capacity Claim Against Ryan

    The Court GRANTS summary judgment in favor of Ryan on the claim that he, in

his individual capacity, deprived Plaintiff of due process by: (a) failing to ensure that

proper procedures were followed in convening the Board and conducting the hearing (Pl.

Mem. at 1); and (b) summarily approving Plaintiff's disenrollment (Pl. Mem. at 8).[7]

     1.    Parties' Arguments

    Plaintiff argues that, as President, Ryan was "responsible for protecting the due

process rights of cadets in connection with disciplinary proceedings brought against them

by" SUNY Maritime.  (Am. Compl. ¶ 57.)  Plaintiff contends that this duty is set forth in

Section 3402.2 of the revised Manual, which states that "the President of the Maritime

College is the only officer authorized to disenroll a cadet." (Pl. Exh. 6, § 3402.2)

(emphasis added).  According to Plaintiff, Ryan was thereby required to conduct an

independent and substantive review of the record prior to authorizing Plaintiff's

---

[7]    Ryan also purports to move for summary judgment on (what Ryan characterizes as) Plaintiff's Section 1983 claim that Ryan informed law enforcement that Plaintiff was "suspicious" and should be investigated.  (Def. Mem. at 14; Am. Compl. ¶ 14-15.)  Ryan states in his declaration that he did not contact any law enforcement authorities to report suspicions about Plaintiff, and that he did not order or suggest that anyone else make such a report.  (Ryan Decl. ¶ 10.)  Plaintiff counters that whether Ryan was suspicious of Plaintiff, and whether Ryan—or anyone else—reported such suspicions to law enforcement "are not material to the due process rights to which [Plaintiff] was entitled before being disenrolled." (Pl. Response to Def. Rule 56.1 Stmt. ¶ 16-18.)  The Court construes this as a statement that Plaintiff is not making a due process claim with respect to the foregoing alleged contacts with law enforcement.  The Court may not dispose of a "controversy" that is not before it.  See, e.g. Acorn v. United States, Nos. 09-5172-cv, 10-0992-cv, 2010 WL 3191442, at *5 (2d Cir. Aug. 13, 2010) (citing U.S. Const. art. III, § 2).  Accordingly, Ryan's motion on this issue is denied.

disenrollment  (Pl. Opp. at 8), to determine (a) whether the convening of Plaintiff's Board comported with due process (i.e., whether Plaintiff received notice and an opportunity to be heard); and (b) whether the Board conducted Plaintiff's hearing in accordance with the dictates of the revised Manual.  (See Pl. Mem. at 1; Pl. Opp. at 3.)

Plaintiff argues that Ryan breached this implied duty by "summarily disenroll[ing] Plaintiff with absolutely no regard for Plaintiff's due process rights."  (Pl. Mem. at 10.)  Specifically, Plaintiff references Ryan's admission that he approved of the disenrollment recommendation without having examined any documents, transcript or tape of the Board's proceedings, and with full knowledge that Plaintiff had not been present at the hearing.  (Id. at 5, 8; Pl. Exh. A at 20-22.)  Instead, Ryan consented to the disenrollment based merely on his regard for the "integrity" of Smith and the members of the Board, and on Ryan's expectation that Plaintiff would appeal the disenrollment.  (Id. at 5; Pl. Exh. A at 21.)[8]

---

[8]      Ryan's deposition transcript reads as follows:

> Q.      Are you aware of any such evidence compiled anywhere that shows exactly what information the board had when it made [the decision to disenroll Plaintiff]?
>
> A.      I think that's a question that could be answered by the suitability board, but not me.
>
> Q.      But you accepted their recommendation?
>
> A.      Actually, these are three great men of integrity.  And Captain Smith, I would follow him to the end of the earth.  He's not going to do something that is not appropriate.
>
> Q.      So essentially without reviewing any documents or transcript or tape, you approved the disenrollment of the student; is that fair to say?
>
> A.      It's fair to say that I expected him to appeal the decision and then I would have to be apprised of all the evidence.  But at that time, yes.

(Pl. Exh. A at 21.)

Ryan counters that neither the revised <u>Manual</u>, nor due process, required him to undertake a substantive, pre-appeal review of Plaintiff's case.[9]  (Def. Opp. at 2, 7.) Section 3402.2 of the revised <u>Manual</u>, which states that Ryan is the "only officer authorized to disenroll a cadet," also provides that, as President, Ryan is "the <u>approving authority</u> for recommendations of Suitability and/or Disciplinary Hearing Boards," and that he is "the <u>reviewing authority</u> for all Class I offenses."  (Pl. Exh. 6, § 3402.2) (emphasis added).  Based on these provisions of the revised <u>Manual</u>, Ryan claims that his involvement in the disenrollment process is limited to (a) the ministerial act of approving the recommendations of the Board; and (b) substantively reviewing any appeals.  (Ryan Opp. Decl.¶3, 5.)

Although the revised <u>Manual</u> did not require him to do so, Ryan customarily engaged in a "preliminary review" prior to approving any disenrollment.  (<u>Id.</u>¶5-7.)  In Plaintiff's case, Ryan states that he followed his "usual practice" by "satisf[ying himself] that the Board members and [Smith] went about their task carefully and with integrity and that the conduct charged would, if true, warrant disenrollment."  (<u>Id.</u>¶7.)

    2.    Analysis

Because Ryan had no due process duty to undertake a substantive, pre-appeal review of Plaintiff's case, the Court GRANTS summary judgment in favor of Ryan and against Plaintiff on this issue.

---

[9]  Although Ryan purports to move for summary judgment on Plaintiff's "supervisory liability" claim (Def. Mem. at 8-10), Plaintiff explicitly states that he does not premise Ryan's liability on a theory of supervisory liability.  (<u>See</u> Pl. Opp. at 3-4.) Such a claim is thus not before the Court, and Ryan's motion must be denied.  <u>See</u> <u>supra</u> n.7.

As a preliminary matter, Ryan's ministerial approval of Plaintiff's disenrollment did not violate the plain text of the revised <u>Manual</u>.  During the "trial" phase of Plaintiff's disenrollment proceedings, Ryan was required to serve as the mere "<u>approving</u> authority" of the disenrollment decision.[10]   (<u>See</u> Pl. Exh. 6, § 3402.2) (emphasis added).   It is undisputed that Ryan "approved" of the decision to disenroll Plaintiff.  (<u>See</u> Smith Decl.¶ 12 ("I communicated the results of the hearing and my recommendation for disenrollment to Admiral John Ryan, . . . who concurred."); Ryan Decl.¶7 ("I satisfied myself that the Board members and . . . Smith went about their task carefully and with integrity and that the conduct charged would, if true, warrant disenrollment.").)  Plaintiff has submitted no evidence indicating that Ryan's "approving authority" during the "trial" phase of Plaintiff's disenrollment called for substantive review, rather than ministerial action.  The plain text of the revised <u>Manual</u> required Ryan to engage in such a substantive "review" of Plaintiff's disenrollment only during formal appeal (<u>see</u> Def. Exh. 11§3404.5(12); Pl. Exh. 6§3402.2)—an appeal that Plaintiff did not timely request.[11]  <u>Cf. Smith on Behalf of</u>

---

[10]     The "trial" phase of SUNY Maritime's disenrollment proceedings encompasses the following: (a) the initial Board hearing, at which members of the Board are required to determine findings of fact, develop opinions, and make recommendations to Smith (Def. Exh. 11,§3404.4, 3404.5(11); Ryan Decl.¶7); (b) Smith's "<u>review</u>" of the report of the Board and any statement by the cadet, and the rendering of Smith's decision as to the cadet's culpability and punishment (Def. Exh. 11,§3404.5(11)) (emphasis added); and (c) Ryan's "<u>approv[al]</u>" of Smith's disenrollment decision (Pl. Exh. 6, § 3402.2) (emphasis added).

[11]     Plaintiff and his immigration counsel were informed of the disenrollment decision by the Immigration Court on March 26, 2003—the same day that the disenrollment was ordered.  (Pl. Response to Def. Rule 56.1 Stmt.¶38; Def. Exh. 17.)  Yet, the undisputed record establishes that Plaintiff never even attempted to avail himself of the appellate procedure provided for in the revised <u>Manual</u>.  (Pl. Response to Def. Rule 56.1 Stmt.¶35.; Ryan Decl.¶7; <u>see</u> Def. Exh. 11§3404.5(12).)  Plaintiff has offered no facts or competent evidence indicating that he and his counsel were, for some reason, unable to appeal the disenrollment order.  (<u>See</u> Pl. Response to Def. Rule 56.1 Stmt.¶ 35.)  Instead, Plaintiff

Smith v. Severn, 129 F.3d 419, 423 n.2 & 429 (7th Cir. 1997) (school's handbook refers to its appellate procedure both as a "review" and as an "appeal").  Plaintiff's failure to file an appeal thus means that Ryan had no duty pursuant to the revised Manual to undertake a substantive review of Plaintiff's case.

Even assuming, arguendo, that Ryan's status as "the only officer authorized to disenroll a cadet" required him to engage in a substantive, pre-appeal review of Plaintiff's disenrollment, Plaintiff has cited no authorities holding (or even suggesting) that such a review is required by due process.  See, e.g., McDarby, 907 F.2d at 1338.  Plaintiff's argument runs counter to precedent holding that those subject to school discipline do not enjoy a due process right to any appellate review.  See, e.g., Severn, 129 F.3d at 429 ("The completely gratuitous [appellate] review by the school board neither is required by due process nor gives rise to any due process rights.");  Nash v. Auburn Univ., 621 F. Supp. 948, 957 (D. Ala. 1985) (stating that the "Supreme Court has never found a right to appeal as inherent in the right to due process of law," and "[a]ll that due process requires is notice and an opportunity for hearing") (quotation and citation omitted), aff'd, 812 F.2d 655 (11th Cir. 1987).

The Court thus GRANTS summary judgment in favor of Ryan and against Plaintiff on the claim of Ryan's individual liability for failing to undertake a substantive, pre-appeal review of SUNY Maritime's disenrollment decision.

V.    Conclusion

For the reasons stated above, the Court (1) DENIES Defendants' motion on the issue of liability for failing to provide adequate notice and a hearing that comported with

---

merely argues that Defendants' violations of the revised Manual precluded a meaningful appeal.  (See Pl. Mem. at 1-2; Pl. Reply at 4.)

due process, and <u>sua sponte</u> GRANTS summary judgment in favor of Plaintiff on those issues (Plaintiff's Third Cause of Action); and (2) GRANTS Ryan's motion for summary judgment on the issue of his individual liability for failing to conduct a substantive, pre-appeal review of Plaintiff's disenrollment decision, and DENIES Plaintiff's motion for summary judgment on that issue (Plaintiff's First Cause of Action).

The parties shall, within three weeks of the issuance of this Opinion & Order, submit to the Court a joint letter specifying: (a) the relief requested by Plaintiff, and the legal or equitable bases for such relief; (b) Defendants' response to Plaintiff's requested relief; and (c) a proposed schedule for any necessary motions or briefing related to the foregoing.

SO ORDERED.

DATED:     New York, New York
           September 30, 2010


                                        _____
                                            KIMBA M. WOOD
                                        United States District Judge