UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
                                          :
SULAIMAN OLADOKUN,                        :
                                          :
                        Plaintiff,        :
                                          :
           -against-                      :                Opinion & Order
                                          :                06 cv 2330 (KMW)
JOHN R. RYAN, individually and in his     :
official capacity as President of State   :
University of New York Maritime College,  :
and RICHARD S. SMITH, in his official     :
capacity as Commandant of Cadets of State :
University of New York Maritime College,  :
                                          :
                                          :
                        Defendants.       :
-----------------------------------------------------X

KIMBA M. WOOD, U.S.D.J.:

        In an earlier opinion, this Court found that Plaintiff Sulaiman Oladokun was deprived of

his due process rights under the Fourteenth Amendment when he was disenrolled from the State

University of New York Maritime College ("SUNY Maritime") without sufficient notice or a

meaningful hearing. *Oladokun v. Ryan*, No. 06 Civ. 2330, 2010 WL 3910578, at *6-10

(S.D.N.Y. Sept. 30, 2010). Oladokun now requests equitable relief and seeks leave to amend his

Complaint in order to name Defendant Richard S. Smith, SUNY Maritime Commandant of

Cadets, in his individual capacity. Defendant John R. Ryan, SUNY Maritime President, moves

to dismiss the damages claim for breach of the implied contract between a college and its

student.

## BACKGROUND

### I.  The Underlying Dispute

The facts underlying this case are discussed more fully in this Court's opinion in *Oladokun v. Ryan*, No. 06 Civ. 2330, 2010 WL 3910578 (S.D.N.Y. Sept. 30, 2010).  Sulaiman Oladokun was an engineering student at SUNY Maritime from August 30, 2000 until March 26, 2003.  Two special agents from the United States Department of State detained Oladokun, a Nigerian citizen, at the SUNY Maritime campus on March 7, 2003, based on the suspicion that he may have submitted false documents regarding his previous coursework as part of his application for an F-1 student visa.  (Declaration of James M. Maloney, dated Jan. 8, 2010 ("Maloney Decl."), Ex. I.; Declaration of Clement J. Colucci, dated Jan. 8, 2010 ("Colucci Decl."), Ex. 10.)  Oladokun was then detained in the custody of the Bureau of Immigration and Customs Enforcement ("ICE"), where he remained until his deportation.

On March 17, 2003, officials at SUNY Maritime began the process of convening a Suitability/Disciplinary Hearing Board (the "Board") to consider Oladokun's suitability as a member of the Regiment of Cadets, SUNY Maritime's student body.   The convening order, dated March 17, 2003, stated that Oladokun's hearing would occur on March 27, 2003.  (Maloney Decl. Ex. A(3); Colucci Decl. Ex. 12.)  On March 19, 2003, Smith rescheduled the hearing to March 24, 2003 and wrote a memorandum documenting the change.  (*Id.*)  Commandant of Cadets Smith sent the order together with the memorandum to Oladokun's off-campus home address.

On March 25, 2003, the attorney representing ICE in Oladokun's removal proceedings faxed SUNY Maritime a request for information regarding Oladokun's enrollment status.  (Maloney Decl. Ex. F; Colucci Decl. Ex. 15.)  The next morning, March 26, 2003, the Board

convened in Oladokun's absence.  Without consulting any witnesses or considering any

testimony, the Board, "after considering all the charges, and deeming them to be true," came to

the unanimous opinion that Oladokun should "be disenrolled from the College immediately."

(Maloney Decl. Ex. G; Def. Ex. 13.)  The same morning, Commandant Smith approved a

memorandum concurring with the Board, thereby disenrolling Oladokun.  (Maloney Decl. Ex. J;

Colucci Decl. Ex. 14.)  SUNY Maritime promptly notified ICE of Oladokun's disenrollment.

(Maloney Decl. Ex. G; Colucci Decl. Ex. 16.)  The ICE attorney presented the disenrollment to

the Immigration Court in a hearing that same day as a basis for Oladokun's removal, on the

grounds that he had failed to maintain his student status. (Colucci Decl. Ex. 17.)  The

Immigration Court subsequently ordered Oladokun deported on June 23, 2003, finding that,

"since the respondent [Oladokun] has been expelled from his university . . . he is no longer a

valid non-immigrant student and he may not remain in the United States."  (Colucci Decl. Ex. 18

at 3.)  ICE ultimately deported Oladokun to Nigeria on January 29, 2004.

## II.  Procedural History

Pursuant to 42 U.S.C. § 1983, Oladokun sued SUNY Maritime President John R. Ryan,

Chief Operating Officer Kimberly R. Cline, and Commandant of Cadets Richard S. Smith,

alleging that he was disenrolled in violation of his rights under the Due Process Clause of the

Fourteenth Amendment.  The Defendants moved to dismiss the Complaint.  (Dkt. No. 8.)  On

October 23, 2007, this Court dismissed the claims against Cline because the complaint had not

sufficiently pleaded her personal involvement in Oladokun's disenrollment.  *See Oladokun v.

Ryan*, No. 06 Civ. 2330, 2007 WL 3125317 (S.D.N.Y. Oct. 23, 2007).  The Court allowed

discovery on the remaining claims against Defendants Ryan and Smith.  *Id*.

Ryan then moved for summary judgment on Oladokun's claims against him in his individual capacity, while Oladokun moved for leave to amend the Complaint to allege facts establishing Ryan's personal involvement in the disenrollment.  (Dkt. No. 35; Dkt. No. 41.)  The Court granted Oladokun leave to amend and denied Ryan's motion for summary judgment without prejudice to refile.  *See Oladokun v. Ryan*, No. 06 Civ. 2330, 2009 WL 857460 (S.D.N.Y. Mar. 31, 2009).

Oladokun's Amended Complaint includes five causes of action: first, an action against Ryan in his official and individual capacities for violation of due process rights; second, an action against Ryan in his official and individual capacities for breach of the implied contract between a college and its student; third, an action against Smith in his official capacity for violation of due process rights; fourth, the action, already dismissed, against Cline in her official capacity for violation of due process rights; and fifth, the action, already dismissed, against Cline in her individual capacity for violation of due process rights.  (Dkt. No. 47.)

The parties then cross-moved for summary judgment.  (Dkt. No. 59; Dkt. No. 66.)  The Court granted Oladokun summary judgment on his Third Cause of Action against Smith for violation of Oladokun's due process rights.  *See Oladokun*, 2010 WL 3910578.  First, the Court found that Defendant Smith deprived Oladokun of due process of law by failing to provide him sufficient notice of the proceedings against him.  *Id.* at *7.  Notice indicating a hearing date of Monday, March 24, 2003 could not have been reasonably calculated to advise Oladokun of a hearing that actually occurred on Wednesday, March 26, 2003.  *Id.*  Second, the Court found that Defendant Smith deprived Oladokun of due process of law by denying him a meaningful hearing before his disenrollment.  *Id.* at *9.  The seriousness of the penalty that awaited Oladokun required, at the very least, that the disenrollment have some evidentiary basis, but the Defendants

4

did not present any evidence upon which they or the Board relied in making the decision.  *Id.* at *10.  The Court granted summary judgment in favor of Ryan on Oladokun's First and Second Causes of Action, which alleged that Ryan deprived Oladokun of due process by failing to ensure that the Board followed the proper procedures and by summarily approving the disenrollment.  *Id.* at * 12.  Neither the constitutional requirements of due process nor SUNY Maritime's rules and regulations required Ryan to undertake a substantive, pre-appeal review of a disenrollment.  *Id.*

In light of the grant of summary judgment on the due process claim against Smith, Plaintiff Sulaiman Oladokun now requests equitable relief, specifically, the release of his transcript from SUNY Maritime.  (Dkt. No. 83.)  Oladokun also seeks leave to amend his Complaint a second time in order to name Smith as a defendant in his individual capacity.  (*Id.*)  Ryan moves to dismiss the remaining claim against him for breach of the implied contract between a school and its student.  (Dkt. No. 81.)

## DISCUSSION

### I.  Equitable Relief

In his Amended Complaint, Oladokun requested "such equitable relief as may be appropriate" to remedy the deprivation of his due process rights.  (Amended Complaint dated April 16, 2009 ("Compl.") ¶ 89.)  In the current motion, Oladokun argues that an order compelling Defendants to release official copies of his SUNY Maritime transcript is an appropriate form of relief. (Plaintiff's Motion for Equitable Relief and Leave to Amend the Complaint ("Pl.'s Mot.") at 2.)  Defendants respond that Oladokun has been denied his transcript only because he still owes fees to SUNY Maritime. (Defendants' Motion in Opposition ("Def.'s

Opp'n") at 12-13.) They contend that his inability to obtain his transcript has no connection to the violation of his due process rights. *Id.*

A.   Remedies for Violations of Due Process Rights

It is well established that the nature and scope of a remedy are determined by the violation. *See, e.g.*, *Milliken v. Bradley*, 433 U.S. 267, 281-82 (1977).  In *Carey v. Piphus*, 435 U.S. 247, 266 (1978), the Court emphasized the significance of deprivations of liberty or property without due process, even if the deprivation were found to be justified: "'[i]t is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake, whatever the ultimate outcome of a hearing.'" *Id.* (quoting *Fuentes v. Shevin*, 407 U.S. 67, 87 (1972)).

When due process rights are violated, the appropriate remedy "depends on the stage at which the violation is found and the relief sought." *Brody v. Village of Port Chester*, 345 F.3d 103, 119 (2d Cir. 2003).  If the issue reaches a court after a due process violation has occurred, the court must endeavor to fashion relief that counteracts the injury or prejudice caused by the violation. *U.S. v. Ray*, 578 F.3d 184, 202 (2d Cir. 2009).

In general, appropriate relief in a due process case would include, at minimum, an order vacating the determination of the Board and ordering a constitutionally adequate hearing at which the merits could be determined. *See, e.g.*, *Brody*, 345 F. 3d at 119-21 (discussing appropriate remedies for the violation of due process in the employment and land condemnation contexts); *Ortiz v. Regan*, 769 F. Supp. 570, 573-75 (S.D.N.Y. 1991) (Mukasey, J.) (ordering a constitutionally adequate hearing to provide plaintiff with the process she was due).

B.   Analysis

Earlier in this litigation, the Court found that an order reinstating Oladokun would be inappropriate given that it is unclear what the outcome of the Board's hearing would have been had Oladokun been provided due process. *Oladokun*, 2007 WL 3125317 at *6. The most obvious remedy in this case would be a new, constitutionally adequate, hearing, when and if Oladokun returns to the United States and requests one.

The challenge in this particular case is that this remedy may prove to be no remedy at all if Oladokun is unable to re-enter the United States.[1] It would be inappropriate to let redress for this constitutional violation rest on such uncertain grounds, especially since Oladokun's disenrollment was intertwined with his deportation, which now makes the occurrence of a new hearing unlikely.

Oladokun, therefore, seeks the release of his transcript. In opposition to Oladokun's request, Defendants state that their refusal to issue a transcript bears no relation to the violation of his due process rights and relates only to his unpaid fees. (Def.'s Opp'n 12.) Defendants contend that "[a]s relief for a due process violation, release of plaintiff's transcript is no more appropriate than complementary [sic] tickets to SUNY Maritime football games or discounts at the SUNY Maritime bookstore." (Def.'s Opp'n 13.)

The Court disagrees. The denial of Oladokun's due process rights effectively curtailed Oladokun's higher education. The release of his transcript would at least allow him to use credits for the work he completed to continue his education elsewhere until a new Board may be able to rule again, with constitutionally adequate process, on his suitability as a member of the Regiment of Cadets. Given the uncertainty surrounding whether or not a new hearing will be practicable in the future, the immediate release of Oladokun's transcript is the most effective

---

[1] Oladokun was deported in 2004 and cannot re-enter the United States until 2014 at the earliest, pursuant to the provisions of section 212(a)(9)(C)(ii) of the Immigration and Nationality Act. His ability to re-enter after that date cannot be predicted.

equitable remedy for the due process he was denied and his ensuing disenrollment. Where "a constitutional violation has been found, the remedy does not exceed the violation if the remedy is tailored to cure the condition that offends the Constitution." *Milliken v. Bradley*, 433 U.S. 267, 282 (1977) (citations omitted). In this case, ordering the release of Oladokun's transcript is narrowly tailored to remedy the violation of his due process rights, given that convening a new hearing is currently impracticable. Receiving his transcript would enable Oladokun to continue his education and put him as close to the position in which he would have been but for the violation of his due process rights.

For the foregoing reasons, Plaintiff's request for equitable relief, in the form of an order compelling Defendants (1) to release official copies of Oladokun's SUNY Maritime transcript upon the payment of customary administrative fees, and (2) to convene a new hearing, when and if Oladokun is able to re-enter the United States and request one, is GRANTED.

## II. Leave to Amend

Oladokun seeks leave to amend the Third Cause of Action, which currently names Richard S. Smith in his official capacity, to now name Smith in his individual capacity as well. Oladokun also correspondingly seeks to add a claim for damages to the existing request for injunctive and declaratory relief that is part of his due process claim.

### A. Federal Rule of Civil Procedure Rule 15

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Although the decision whether or not to allow an amended pleading rests within the sound discretion of the district court, the Supreme Court has emphasized that amendment should be liberally permitted to allow cases to be decided

on the merits. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *Foman v. Davis*, 371 U.S. 178, 181-82 (1962). Indeed, refusal to grant leave without justification is "inconsistent with the spirit of the Federal Rules." *Foman*, 371 U.S. at 182 (1962). In *Foman*, the Court stated explicitly that:

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given." 371 U.S. at 182 (1962).

Rule 15 reflects two fundamental principles underlying the Federal Rules: pleadings serve the essential role of providing notice to the opposing party of the claim to be litigated, *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007), and "mere technicalities" should not prevent cases from being decided on the merits, *see Foman*, 371 U.S. 178 (1962). Concerns about notice require that if the statute of limitations for a claim has expired, an amendment must "relate back" to the date of the original pleading.

Whether or not an amendment relates back is determined by Rule 15(c). Rule 15(c) provides in relevant part that:

> (1) An amendment to a pleading relates back to the date of the original pleading when:
> . . .
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)

B.   Analysis

9

Richard S. Smith has been a defendant in his <u>official</u> capacity since the inception of this action in 2006.  Oladokun now moves for leave to name Smith in his <u>individual</u> capacity as well. Amending the capacity in which a defendant is named is understood to be changing the "naming of the party against whom a claim is asserted," and thus requires the movant to meet the requirements of Rule 15(c)(1)(C).  *See, e.g.*, *Sanders-Burns v. City of Plano*, 594 F.3d 366, 371-72 (5th Cir. 2010); *Cupe v. Lantz*, 470 F. Supp. 2d 128, 134 (D. Conn. 2007) (Arterton, J.). Thus, for Oladokun to establish that the Amended Complaint relates back to the original Complaint, he must demonstrate that: (1) the amended pleading arises from the same conduct or occurrence as the original pleading; (2) that Smith received sufficient notice of the action so as not to be prejudiced in preparing a defense; and (3) that Smith knew or should have known that, but for a mistake of identity, he would have been named in his individual capacity in the original pleading.

Oladokun's proposed amendment satisfies Rule 15(c)(1)(B), as the amendment sought would change only the capacity in which Smith is named and the claim clearly relies on the same conduct and occurrences pleaded in the original Complaint. (*See* Def.'s Opp'n 6 (conceding that plaintiff satisfies 15(c)(1)(B)).)  The Court now turns to the closer questions of whether Rule 15(c)(1)(C)(i) and (ii) are satisfied.

1. *Rule 15(c)(1)(C)(i)*

Named in his official capacity in the original Complaint, Smith received notice of the action within the Rule 4(m) period.  The question is thus whether that notice was sufficient to avoid prejudicing him in defending individual capacity claims.  A defendant may receive notice of official capacity claims but still be prejudiced in defending an amended complaint bringing individual capacity claims, since the claims in the new capacity may require a different defense

strategy.  *Atchinson v. District of Columbia*, 73 F.3d. 418, 427 (D.C. Cir. 1996) (upholding the denial of leave to amend that was not requested by plaintiff until the scheduled trial date, because of the potential for prejudice to the defendant who could have chosen to retain private counsel and develop a different litigation strategy if he had known he would be named in his individual capacity); *Lovelace v. O'Hara*, 985 F.2d 847, 850-51 (6th Cir. 1993) (emphasizing that "the distinction between an official capacity and an individual capacity suit is significant. . . .  [A]n amendment in a defendant's capacity . . . alters the elements of recovery and defense."); *Brown v. Comm'n on Human Rights & Opportunities*, No. 02 Civ. 223, 2008 WL 687358 at *7 (D. Conn. Mar. 10, 2008) (Droney, J.).  In other circumstances, defendants named in their official capacities or in ambiguous capacities have been found to have received sufficient notice of claims later added in an individual capacity.  *Sanders-Burns*, 594 F.3d at 378-79 (holding that the defendant, having been named in his official capacity, had sufficient notice and was not prejudiced by the amendment because he could still effectively pursue a different defense strategy or retain private counsel); *Moore v. City of Harriman*, 272 F. 3d 769, 774 (6th Cir. 2001) (finding that because the plaintiff had alleged constitutional claims based on the officers' own conduct, even though it was not clear in which capacity they were initially named, "the officers received clear notice from the beginning that they faced individual liability of some sort for the conduct").

Smith argues that the late date of the proposed amendment, and the fact that Oladokun filed both an original Complaint and an Amended Complaint naming Smith in only his official capacity, together made it reasonable for him to believe that he had no reason to develop any

defense of his "personal conduct."[2]  (Def.'s Opp'n 11.)  It is a significant concern that a defendant named in only his official capacity might not have reason to believe he was being sued in his individual capacity.  *See Brown*, 2008 WL 687358 at *7.

        During the period in question, Ryan was the President of SUNY Maritime and Smith was the Commandant of Cadets.  When Oladokun filed his original Complaint he believed that previous version of SUNY Maritime's rules and regulations were in effect.  That version required the <u>President</u> to convene the Board, to review its report, and to render his decision on a student's suitability.  After the original Complaint was filed, Defendants showed that this version of the rules had been superseded by the time of Oladokun's disenrollment and that it was actually the Commandant of Cadets who was responsible for convening the Board at that time.  The revised rules, however, still provided that the <u>President</u> was the only officer authorized to disenroll a student, and it is on this basis that Oladokun continued to bring his individual capacity claim against Ryan. (Pl.'s Reply 2)

        Throughout the litigation, all defendants have been represented by the New York State Attorney General's Office, which was aware from the outset that Oladokun sought to bring both official and individual capacity claims for the violation of his due process rights.  Smith and Ryan and their lawyers knew better than Oladokun the exact roles and responsibilities of each Defendant.  Smith had constructive notice of the individual capacity claim within the Rule 4(m) period because the Complaint made clear that Oladokun sought damages in an individual capacity from the person responsible for violating his due process rights, and Smith and Ryan and their lawyers should have known that Smith was not named in his individual capacity because of Oladokun's misunderstanding of who was responsible for the disenrollment process.

---

[2] Defendants further argue that "[f]or all practical purposes, [Smith] has been a nominal, indeed, a superfluous defendant in this action."  (Def.'s Opp'n 11.)  It is hard for the Court to understand how one of the three named defendants alleged to have violated Oladokun's due process rights could be considered "superfluous" in this case.

*See Krupski v. Costa Crociere*, 130 S. Ct. 2485, 2497 (2010); *Susan Faris Designs, Inc. v. Sheraton New York Corp.*, No. 98 Civ. 8166, 2000 WL 191689 at *5 (S.D.N.Y. Feb. 10, 2000) (Cote, J.) ("Notice of allegations against proposed defendants may be imputed to them through a shared attorney if the attorney knew or should have known that but for a mistake concerning the identity of the proper party, the proposed defendants would be added.").  Although claims against a defendant in his official capacity and his individual capacity are indeed different, Smith still has the opportunity to pursue whatever defense strategy he finds appropriate with regard to the individual capacity claims.  Therefore, the Court finds that Smith received notice such that amending the Complaint will not prejudice him in defending the claims on the merits, thereby satisfying Rule 15(c)(1)(C)(i).

 2.  *Rule 15(c)(1)(C)(ii)*

Rule 15(c)(1)(C)(ii) requires the Court to determine whether Smith knew or should have known that, but for a mistake of identity, he would have been named in his individual capacity. The rule "presupposes that in fact the reason for his not being named was a mistake in identity." *Cornwell v. Robinson*, 23 F. 3d 694, 705 (2d Cir. 1994).  A mistake in identity can be a factual mistake (*i.e.*, that Oladokun misapprehended the identity of the individual he wished to sue) or a legal mistake (*i.e.*, that Oladokun misunderstood the legal requirements of his cause of action). *Soto v. Brooklyn Corr. Facility*, 80 F.3d 34, 36 (2d Cir. 1996).

 The Supreme Court recently addressed the question of what constitutes a mistake for the purposes of Rule 15(c)(1)(C)(ii) in its decision in *Krupski v. Costa Crociere*, 130 S. Ct. 2485 (2010).  The Court held that the relation back of an amendment changing the naming of a party against whom a claim is asserted depends on what the defendant knew or should have known,

13

not on the plaintiff's knowledge or timeliness in seeking to amend the pleading.  *Id.* at 2490.

The Court explained that:

> A plaintiff may know generally what party A does while misunderstanding the
> roles that party A and party B played in the "conduct, transaction, or occurrence"
> giving rise to her claim.  If the plaintiff sues party B instead of party A under
> these circumstances, she has made a "mistake concerning the proper party's
> identity" notwithstanding her knowledge of the existence of both parties."

*Id.* at 2494 (citing Fed. R. Civ. P. 15(c)(1)(C)(ii).

The hypothetical circumstances described by the Court in *Krupski* closely parallel the

situation here– Oladokun knew generally that Smith was the Commandant of Cadets, but

misunderstood the roles that Smith and Ryan played in the conduct giving rise to his claim.

Believing President Ryan was the individual ultimately responsible, Oladokun sued President

Ryan in his official and individual capacities, but Smith in only his official capacity.  As

Defendants suggest, this <u>was</u> a deliberate choice.  But as the Supreme Court instructs, "[t]hat

kind of <u>deliberate but mistaken</u> choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has

been satisfied."  *Id.* (emphasis added).  According to this logic, Oladokun's mistake would

constitute a "mistake concerning the proper party's identity" even though Oladokun knew of

both parties' existence and the possibility that they could be sued in different capacities.

The Court in *Krupski* further stated that "[t]he only question under Rule 15(c)(1)(C)(ii),

then, is whether party A knew or should have known that, absent some mistake, the action would

have been brought against him."  *Id.*  Following the reasoning of the Court in *Krupski*, Smith,

who was well aware of the role he and Ryan played under SUNY Maritime's rules, should have

known that, but for Oladokun's misunderstanding of Ryan and Smith's roles in his

disenrollment, Oladokun would have sued Smith in his individual capacity instead of Ryan.

14

In *Krupski*, the Court emphasized that the purpose of the relation back doctrine is "to balance the interests of the defendant protected by the statute of limitations with the preference. . . for resolving disputes on their merits." *Id.*  The Court went on to state that:

> "a prospective defendant who legitimately believed that the limitations period had passed <u>without any attempt to sue him</u> has a strong interest in repose.  But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity."

*Id.* (emphasis added).

Here, Smith was named in the Complaint from the outset.  The same original Complaint included individual capacity claims seeking damages for the violation of Oladokun's due process rights.  Smith is not able to escape suit on these same claims solely because Oladokun misunderstood crucial facts about his role.

For the foregoing reasons, Oladokun's motion for leave to amend the Complaint to name Smith in his individual capacity is GRANTED.

**III.  Motions to Dismiss**

Defendant John R. Ryan moves to dismiss the Second Cause of Action, a damages claim against him in his individual capacity for breach of contract, on two grounds.  First, he argues that this state law claim, currently before the Court on the basis of supplemental jurisdiction pursuant to 28 U.S.C. § 1367, should be dismissed now that the federal claims against him have also been dismissed.  In the alternative, Ryan argues that, if this Court chooses to retain jurisdiction, the damages claim for breach of contract should be dismissed because it lies against only the other party to the contract, here SUNY Maritime, and not an agent of that party.

    A.  <u>Subject Matter Jurisdiction</u>

        *1.  28 U.S.C. § 1367*

The exercise of supplemental jurisdiction by federal courts is governed by 28 U.S.C. § 1367.  The statute provides that, with several exceptions not relevant here, in any civil action in which a federal court has jurisdiction over a federal claim, the court "shall have supplemental jurisdiction over all other claims that are so related [to the federal claim] . . . that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  Even where this condition is satisfied, however, district courts may decline to exercise supplemental jurisdiction over a claim if "(1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

Enacted in 1990, 28 U.S.C. § 1367 has its origins in the doctrine of pendent jurisdiction, which was discussed in detail by the Supreme Court in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725-29 (1966).  The Court in *Gibbs* emphasized that supplemental jurisdiction is rooted in

> considerations of judicial economy, convenience, and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims. . . .  Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.

383 U.S. at 726; *see also*, *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Determining whether to exercise supplemental jurisdiction over a state law claim requires district courts to answer three questions.  First, the court must examine whether the state claim is part of the same case or controversy as the federal claims, such that it is within the mandatory supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367(a).  Second, the court must determine whether the claim falls within one of the circumstances specified in 28 U.S.C. §

1367(c) that allow the Court to decline to exercise supplemental jurisdiction.  Third, the court must evaluate whether the values of judicial economy, convenience, fairness, and comity support retaining jurisdiction or dismissing the claim.  *Gibbs*, 383 U.S. at 726-27 (1966); *see also Bu v. Benenson*, 181 F.Supp. 2d 247, 251 (S.D.N.Y. 2001) (Lynch, J.).

> 2.  *Analysis*

In the Amended Complaint's Second Cause of Action, Oladokun brings a state law damages claim against Ryan in his individual capacity for breach of the implied contract between a college and its student.  The claim is based on Ryan's role in approving Oladokun's disenrollment and arises out of the same common nucleus of operative facts as Oladokun's federal claims against the Defendants for violating his due process rights.  *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000) (applying the *Gibbs* "common nucleus" test to the interpretation of facts under 28 U.S.C. § 1367).  Because it arises out of the same case or controversy as the federal claim, the state law contract claim falls within this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

Defendants argue that, because all of the federal claims supporting original jurisdiction against Ryan have now been dismissed, the state law contract claim falls under the provisions of 28 U.S.C. § 1367(c)(3).  (Defendants' Motion to Dismiss ("Def.'s Mot.") at 4.)  The statute provides that a district court may decline to exercise supplemental jurisdiction if it "has dismissed <u>all claims over which it has original jurisdiction</u>." 28 U.S.C. § 1367(c)(3) (emphasis added).  The statute does not specify if it is meant to apply when the court has dismissed all federal claims <u>against a particular party</u>, but retains a claim over which it has original jurisdiction against another party, as is the case here.

17

Some district courts have declined to exercise jurisdiction on a party-by-party basis in similar circumstances. *Germano v. Dzurenda*, No. 09 Civ. 1316, 2011 WL 1214435 at *20 (D. Conn. Mar. 28, 2011) (Underhill, J.) (dismissing without prejudice state claims against twelve defendants once federal claims against those same twelve defendants were dismissed, even though federal claims in the case remained viable against others); *Lewis v. Sieminski*, No. 08 Civ. 728, 2010 WL 3827991 at *9 (D. Conn. Sept. 22, 2010) (Hall, J.) (declining to exercise supplemental jurisdiction over state law claims against defendants after dismissing the federal claims against them, even though federal claims against another party continued).  The Second Circuit, in a summary order, has indirectly supported this interpretation by instructing a district court to pursue party-by-party exercise of supplemental jurisdiction under 28 U.S.C. § 1367(c)(3).  *Rosen v. County of Suffolk*, 121 Fed. Appx. 885, 887 (2d Cir. 2005) ("In the event that any of the defendants named in any of the state law claims over which the District Court declined under 28 U.S.C. § 1367(c)(3) to assert supplemental jurisdiction is a party to any claim remaining before the District Court following this remand, the Court should reconsider its election to decline jurisdiction over claims involving such party.").

After examining the plain language of 28 U.S.C. 1367(c)(3) and the statute's construction, however, other district courts have found that the provision does not apply in a situation where federal claims remain in the litigation, even if those claims have been dismissed against one of the parties involved.  *Moore v. Natwest Mkts.*, No. 96 Civ. 1166, 1996 WL 507333 at *3 (S.D.N.Y. Sept. 6, 1996) (Patterson, J.) ("Section 1367(c) does not apply when any federal claim exists in the lawsuit against any of the parties."); *Rophaeil v. Aiken Murray Corp.*, No. 94 Civ. 9064, 1996 WL 221567 at  *2 (S.D.N.Y. May 2, 1996) (Haight, J.) ("Since the Court has not dismissed 'all' federal claims from this action . . . the plain language of this provision does

not apply to the case at bar."); *Wilson v. Roberson*, No. 92 Civ. 2709, 1993 WL 119695 at *2 (S.D.N.Y. Apr. 14, 1993) (Wood, J.) ("By enacting § 1367, Congress explicitly rejected a line of Supreme Court decisions which held that pendent jurisdiction could not be used to support a state claim against a party that was not subject to a federal claim. . . .  The relatedness of the claim, rather than the identity of the party against whom the claim is asserted, determines the court's jurisdiction.")

The plain language of the statute gives a district court discretion to decline to exercise jurisdiction only if it "has dismissed <u>all</u> claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3) (emphasis added).  This language appears to preclude the application of that discretion in a case when <u>any</u> claim arising under federal law remains, regardless of the identity of the party against whom the claim lies.

This interpretation is reinforced by the overall purpose of 28 U.S.C. § 1367, which confers mandatory supplemental jurisdiction over state law claims that "form part of the same case or controversy" as claims over which the district courts have original jurisdiction.  The statute is designed to allow a case arising out of a common nucleus of operative facts to be tried in a single court, and expressly provides that "supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."[3]  28 U.S.C. 1367(a).  Allowing some parties, against whom only state law claims lie, to be dismissed, while allowing other parties, against whom federal claims lie, to remain in federal court, would defeat the purpose of the mandatory conferral of supplemental jurisdiction for the joinder or intervention of additional

---

[3] In passing the statute in 1990, Congress overruled *Finley v. United States*, 490 U.S. 545 (1989) and its predecessors, which had rejected the doctrine of "pendent party jurisdiction" and held that, in a case with state and federal claims pending against multiple parties, a federal court could not assert jurisdiction over those parties as to which no independent basis for federal jurisdiction existed. 490 U.S. at 556.

parties, and, more generally, would leave cases with a common nucleus of operative facts split between federal and state courts.

The Court finds that the plain language of the statute, amply reinforced by its purpose, provides that a court may decline to exercise jurisdiction only if "all claims over which it has original jurisdiction" have been dismissed.  A federal claim against Smith for violation of due process remains before the Court.  Therefore, the Court finds that the terms of 28 U.S.C. § 1367(c)(3) are not met and the Court may not decline to exercise supplemental jurisdiction.

Even if the Court were able to exercise its discretion to dismiss Ryan, the values of judicial economy, convenience, fairness, and comity support retaining jurisdiction in this case. *Kolari v. New York–Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006).  With respect to judicial economy, this case has been before the Court for five years and the parties have already engaged in discovery.  This will be the Court's fourth substantive opinion in the case.  To force the parties to begin litigation again in a new court, five years after the complaint was filed, in order to resolve one contract claim would be inconvenient and unfair.  In terms of comity, deciding this state law contract claim will not encroach on state courts' role in interpreting state law.

For the foregoing reasons, the Court retains jurisdiction over the state law contract claim and now turns to evaluating the Defendants' motion to dismiss the claim.

B.  Rule 12(b)(6)

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a plaintiff's claim for relief.  In evaluating the legal sufficiency of the claim, a court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor to determine whether they plausibly

give rise to an entitlement to relief.  *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1948-51, 173

L.Ed.2d 868 (2009); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

### 1.   The Implied Contract Between a University and its Students

New York has long recognized that an "implied contract" may be created between an

institution of higher education and its students, which prevents that institution from acting in an

arbitrary or irrational fashion.  *Carr v. St. John's Univ.*, 17 A.D.2d 632, 633 (App. Div. 2d Dep't

1962); *Sofair v. State Univ. of N.Y.*, 54 A.D.2d 287, 290 (App. Div. 2d Dep't 1976), *rev'd on

other grounds* 44 N.Y. 2d 475 (1978).   The essence of the implied contract is that "an academic

institution must act in good faith in its dealings with its students."  *Olsson v. Bd. of Higher

Educ.*, 49 N.Y. 2d 408, 414 (1980).

The rights and obligations of the parties to this contractual relationship arise out of "the

university's bulletins, circulars and regulations made available to the student, [which] become a

part of this contract" *Baldridge v. State*, 293 A.D.2d 941, 943 (App. Div. 3d Dep't 2002); *Vought

v. Teachers Coll. Of Columbia Univ.*, 127 A.D.2d 654, 655 (App. Div. 2d Dep't 1987).  Breach

of implied contract claims are limited, therefore, to those that can establish a contract for specific

services or conduct based on publications made available to students.  *Paladino v. Adelphi Univ.*,

89 A.D.2d. 85, 92 (App. Div. 2d Dep't 1982).  Since the implied contract claims must be based

on specific representations made in the institution's written materials, they are brought against

the institution itself.  *Baldridge*, 293 A.D.2d at 942-43; *Vought*, 127 A.D.2d at 654-55.

Breach of contract claims must be brought against the other party to the contract, in this

case, the academic institution, and generally cannot be brought against employees, agents, or

officers of the breaching party.  *Worthy v. New York City Hous. Auth.*, 21 A.D.3d 284, 286 (App.

Div. 1st Dep't 2005) ("A corporate officer is not subject to personal liability for actions taken in

furtherance of the corporation's business under the well-settled rule that an agent for a disclosed

principal will not be personally bound unless there is clear and explicit evidence of the agent's

intention to substitute or superadd his personal liability for, or to, that of his principal.");

*Lichtman v. Mount Judah Cemetery*, 269 A.D.2d 319, 320 (App. Div. 1st Dep't 2000)

("Corporate officers may not be held personally liable on contracts of the corporation where they

did not purport to bind themselves individually.").

        2.  *Analysis*

Oladokun argues that (1) SUNY Maritime's written materials make specific

representations about the President's responsibilities; (2) Ryan personally breached those implied

contractual duties; and (3) Ryan himself should be individually liable for the breach.  (Plaintiff's

Motion in Opposition to Ryan's Motion to Dismiss ("Pl.'s Opp'n") 5-7.)  Oladokun contends

that, since the President of SUNY Maritime is the only officer authorized to disenroll a cadet, "it

was Ryan who breached a contractual duty when he failed to act in good faith in summarily

disenrolling" Oladokun.  (Pl.'s Opp'n 5.)  As evidence of Ryan's lack of good faith, Oladokun

points to Ryan's deposition testimony, in which Ryan states that he approved of the

disenrollment knowing Oladokun had not been present at the hearing and without reviewing any

documents, transcripts, or tapes of the Board's meeting.  (Pl.'s Opp'n 6.)

Despite Oladokun's innovative argument, the facts do not indicate any theory on which

the Court can find that Ryan personally entered into a contract with SUNY Maritime's cadets, in

general, or Oladokun, in particular.  The President of SUNY Maritime is an officer of the

institution and any claim for implied breach of contract lies against SUNY Maritime itself, not its

President.  *Worthy*, 21 A.D.3d at 286; *see also Ogindo v. DeFleur*, No. 07 Civ. 1322, 2008 WL

5105153 at *7 (N.D.N.Y. Oct. 16, 2008) (McAvoy, J.) (dismissing claims against individual

defendants and finding that any contractual relationship that existed was between the university and its student).  Drawing all reasonable inferences in Oladokun's favor, the Court finds that that the pleadings fail to plausibly give rise to an entitlement to relief.

For the foregoing reasons, the Defendants' motion to dismiss the state law contract claim is GRANTED and Plaintiff's remaining claim against Ryan is dismissed.

## CONCLUSION

For the foregoing reasons, the Court (1) GRANTS Plaintiff's request for equitable relief, in the form of an order compelling Defendants (a) to release official copies of Oladokun's SUNY Maritime transcript upon the payment of customary administrative fees, and (b) to convene a new hearing, when and if Oladokun is able to re-enter the United States and request one; (2) GRANTS Plaintiff's request for leave to amend the Complaint to name Smith in his individual capacity; and (3) GRANTS Defendants' motion to dismiss the state-law claims against Ryan.

The parties shall file a joint status letter by Friday, October 21, 2011, informing the court how they wish to proceed with this litigation.


SO ORDERED.


DATED:        New York, New York
              September 27 2011


                                    KIMBA M. WOOD
                                    United States District Judge


23

defendants and finding that any contractual relationship that existed was between the university and its student).  Drawing all reasonable inferences in Oladokun's favor, the Court finds that that the pleadings fail to plausibly give rise to an entitlement to relief.

For the foregoing reasons, the Defendants' motion to dismiss the state law contract claim is GRANTED and Plaintiff's remaining claim against Ryan is dismissed.

## CONCLUSION

For the foregoing reasons, the Court (1) GRANTS Plaintiff's request for equitable relief, in the form of an order compelling Defendants (a) to release official copies of Oladokun's SUNY Maritime transcript upon the payment of customary administrative fees, and (b) to convene a new hearing, when and if Oladokun is able to re-enter the United States and request one; (2) GRANTS Plaintiff's request for leave to amend the Complaint to name Smith in his individual capacity; and (3) GRANTS Defendants' motion to dismiss the state-law claims against Ryan.

The parties shall file a joint status letter by Friday, October 21, 2011, informing the court how they wish to proceed with this litigation.


SO ORDERED.


DATED:        New York, New York
              September 27 2011


_____
KIMBA M. WOOD
United States District Judge


23